WILLIAM E. HALE

*v.*

HENRY B. BRYANT *et al.*

*Filed at Ottawa January 23, 1884.*

1. SPECIFIC PERFORMANCE—*party seeking must perform, and not have abandoned contract.* To justify a decree for the specific performance of a contract, it must be fair and free from fraud on others, and it must be shown that the complainant has fully performed on his part. If this is not made to appear, or it appears by the weight of the evidence that the agreement has been abandoned, a specific performance will be denied.

2. A defendant, after having assigned his property for the benefit of his creditors, employed one of them, the complainant, to assist him in effecting a settlement with the other creditors, agreeing to pay him one-half of the assigned property that might remain after the debts named were "settled and canceled," they to be settled out of the property so transferred, or its proceeds. The creditors signed a composition, whereby they were to receive forty cents on the dollar. They were not paid out of such property or its proceeds, but the means were raised otherwise, and the claims, instead of being canceled, were assigned to a third party, who made advances on them to the creditors. After this, the parties treated the contract as abandoned, the complainant receiving the defendant's indebtedness to him in full, although he had signed the composition: *Held,* that a bill for the specific performance of such agreement was properly dismissed.

3. SAME—*contract must be fair.* No matter what form a transaction may take, however plausible on its face, a court of equity will discover the real intention of the parties, and will not permit one party to reap an advantage from a contract not just to others with whom he is dealing.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Messrs. DUPEE & JUDAH, for the appellant.

Messrs. MONROE & TEWKESBURY, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This case has been subjected to a most thorough and elaborate discussion by the respective counsel, yet the view taken by the court may be shortly stated. The bill is to compel a specific performance of a contract of the date of October 23, 1878, between William E. Hale, complainant, and defendant Henry B. Bryant. It may be well, first, to learn what the contract is; and second, to ascertain, as near as may be, its meaning. It is set forth in the contract, by way of recitals, that Henry B. Bryant had, on the 17th day of June, 1878, made an assignment of all his property and effects to Farlin Q. Ball, for the benefit of his creditors; that he was desirous of securing the aid and assistance of complainant in procuring a full settlement of the indebtedness mentioned in a schedule attached, marked "A;" that the property described in exhibit "B," and attached, is a portion of that included in the assignment; and it is then set forth it was agreed the contracting parties should use their best efforts to effect a settlement with the creditors named in schedule "A," on the most favorable terms, and that it was agreed that any property mentioned,—that is, in the schedule attached,—may be sold, or otherwise used in the settlement of such indebtedness. In consideration of the services complainant was expected to render in the premises, Bryant agreed he would cause to be conveyed to complainant, by as good title as he had himself, one-half of all the property described in the contract that might be left after the debts therein mentioned should be "settled and canceled," or have

been assumed by parties satisfactory to him. The contract contains other provisions, some of which are not material in the view taken of the case, but such as may be thought to be necessary will be stated in the brief discussion that may be had.

As to the meaning of the contract, first, it is apparent the contract had exclusive reference to debts and property mentioned and described in the schedules attached, for it was provided any property belonging to Bryant, not mentioned in the exhibits, shall be and remain his without reference to the agreement, and any debts not scheduled should be paid by Bryant out of any property not described in the contract, or out of his share of the remainder of the property after the debts should be paid. Second, it is obvious the debts were to be paid from the proceeds, or the property itself, described in the schedules attached to the contract, and not otherwise. Third, complainant is only entitled, by the terms of the contract, to one-half of the property that may be left after the debts are fully paid. Fourth, complainant is in no event entitled to a specific performance of the contract until thirty days after the debts mentioned are "settled and canceled," and that was to be done out of property described in the schedules attached.

Keeping in view this construction of the contract, it may now be inquired whether there is any satisfactory evidence of a performance on the part of complainant. It can hardly be said there is. There is no pretense the indebtedness spoken of in the schedules attached to the contract has been "settled and canceled." The allegation in the bill in regard to the claims against defendant is, "instead of being settled, have been assigned to Henry Willis Bryant." The testimony shows this allegation to be true. By the terms of the composition agreement, as originally made, the creditors, in consideration of forty per cent of the claims to be paid to them, agreed to assign their claims to Francis T. Wheeler; but

when the money came to be paid, their claims were assigned to Henry Willis Bryant, who now holds many of them, independently of any control over them either by complainant or the debtor, and no reason is shown why he may not enforce payment—certainly to the extent he has advanced money upon them—against the estate of the debtor in the hands of his assignee. According to the testimony, the creditors sold and assigned their claims to H. Willis Bryant, and one reason complainant assigns why he did not take forty per cent for his claim, according to the terms of the composition agreement, which he had signed with other creditors, is, that he supposed if he did he would have to sell his claim to H. Willis Bryant, which he never agreed to do, and did not wish to do. Conceding, then, as the evidence is, these claims against the debtor were sold and assigned to H. Willis Bryant, how can it be said they have been "settled and canceled?" It is certain they are still held by the assignee as valid and subsisting indebtedness, beyond any control of either party to the contract. It does not appear the assignee is under any obligation to surrender the evidences of indebtedness in his hands until payment is made. It may be a question as to what sum he may demand,—whether the face value of the claims, or only the actual sum advanced upon them. But be that as it may, that they are subsisting claims in his hands, to some extent, seems evident, and for that reason it can not be said they have as yet been "settled and canceled," in the sense those terms are used in the contract. Had the claims been assigned to Wheeler, as the agreement originally provided they should be, complainant might have controlled them so as to deliver them up to defendant to be "canceled," but now they have passed from his control, either with or without his consent, and are still uncanceled in the hands of the assignee, who claims an interest in them adverse to complainant and to the original debtor.

As the contract has been construed, it implies the debts must be paid out of the property enumerated in the schedule made part of the contract, or the proceeds, when converted into money. That has not been done. The money with which the creditors were paid for assigning their claims was raised on property owned by others than the debtor. The title to the property out of which the debts should have been paid still remains in the assignee to whom it was conveyed, and it certainly can not be divested until the debts shall be paid or in some way discharged.

There is another view that may be taken of the case. The evidence affords some ground at least for the belief that after it was discovered the money with which to pay the creditors could not be raised out of or upon the property scheduled, the contract of October 23, 1878, was mutually abandoned. The defendant, and one other witness having no interest in the subject of the litigation, both distinctly so state. It is true complainant denies that he ever abandoned the contract for a moment, but always insisted upon his rights under it. Treating the parties as of equal respectability, as must be done, the evidence would seem to preponderate in favor of that theory of the case,—that the contract was mutually abandoned when it was ascertained the money with which to buy in the claims had to be raised out of trust property belonging to the children of defendant. It was certainly so changed the claims were to be assigned to Willis Bryant instead of Wheeler, and they were so assigned. That placed them beyond the control of complainant,—at least it is not shown he had any right to control the claims, or any of them, in the hands of Willis Bryant. Corroborative of this view is the fact that after the claims were assigned to, or that it was agreed they should be assigned to, Willis Bryant, complainant, by some proceeding had in the county court, insisted upon and did collect the full amount of his claim against defendant, notwithstanding he had signed the composition

agreement with the other creditors to take forty per cent of their respective claims. At the time the other creditors were paid he would have received forty per cent on his claim, but he did not choose to take it, for, as he says himself, if he did he supposed he would have to "sell" his claim to H. Willis Bryant, which he did not wish to do. Had he then supposed the contract was in force, there can hardly be a doubt he would have taken the forty per cent on his claim as the other creditors did, and as he had agreed he would do. This fact itself tends most strongly to support the theory the contract had been abandoned, or at least the other parties understood it had been, and that he acquiesced in that understanding.

No discussion need be had, at this time, of the question so elaborately argued by counsel, whether the contract is contrary to public policy, and for that reason void. Without entering upon the consideration of that branch of the case, it may be said the proof does not show any contract so fair in all its parts, and so fully performed by complainant, that equity will decree a specific performance. Evidence given fully justifies the belief that complainant, when he executed the composition agreement and procured other creditors to do so, expected ultimately to realize more by the transaction than other creditors would get under its provisions. By inducing other creditors to take a small per cent of their claims, there would be something left to divide between himself and the debtor. No matter what form a transaction may take, however plausible on its face, equity will discover the real intention of the parties, and will not permit one party to reap any advantage from a contract not just to others with whom he is dealing. Without passing definitely on the question whether the contract is contrary to public policy, it may fairly be said enough appears from the attendant circumstances to make a court of equity hesitate to enforce it.

The decree of the Superior Court will be affirmed.

*Decree affirmed.*