BOOTH v. MURDOCK.[1]

Specific Performance—Invention—Want of Equity.

Complainants contracted with a person to invent and patent a machine for them. Although the money was furnished according to the contract, it proved insufficient, and the work was stopped. Subsequently the inventor made an agreement with one having no knowledge of complainants' contract, to furnish money to complete the invention for an interest in it. The inventor died, and complainants filed a bill for specific performance. *Held*, that it would be inequitable to enforce the contract, especially against the defendant who had furnished large sums to complete the invention.

Appeal from Wayne; Frazer, J. Submitted October 15, 1902. (Docket No. 60.) Decided April 7, 1903.

Bill by Clarence H. Booth and Walter E. Booth against Charles A. Murdock, Austin E. Wing, administrator of the estate of Charles F. Murdock, deceased, and Eugene H. Sloman, for the specific performance of a contract. From a decree dismissing the bill, complainants appeal. Affirmed.

*Charles C. Stewart* (*Moore & Moore*, of counsel), for complainants.

*E. T. Berger*, for defendant Murdock.

*Walker & Spalding*, for defendant Wing.

*Adolph Sloman*, for defendant Sloman.

---

[1] Rehearing denied September 22, 1903.

HOOKER, C. J.  Complainants ask specific performance of a contract whereby Charles F. Murdock, now deceased, agreed to invent a machine for the pressing of bath tubs from sheets of steel, and after constructing a small model of such machine, and demonstrating its ability to produce the bath tub in miniature, to construct upon complainants' premises working machines of sufficient size to produce a merchantable bath tub of the description mentioned, and capacity for 20 tubs per day.  In consideration of the above, complainants promised to pay $5,000 as follows, viz. :  $200 during the construction of model machines, and additional money as might be required for labor and material in constructing the large machines, to the amount of $1,500; the balance to be paid when the machines should be erected on complainants' premises, and a merchantable tub produced.  It was further agreed that, "upon completion of the above," Murdock should assist complainants to procure "patents covering all new and useful features brought into use by the construction of said machines, and the products thereof, and assign all his rights and titles therein " to the complainants.

The model was constructed, and miniature tubs were produced by it, some being perfect and some imperfect. Work was commenced on a large machine, and continued for a time, but was finally suspended by reason of Murdock's want of funds to go on with it.  Complainants were during this time stockholders in a concern known as the Steel Bath Tub Company, and they assigned to it an interest in the contract with Murdock.  They also paid Murdock from time to time, in accordance with said contract, by giving to him the checks of the Steel Bath Tub Company, until they had paid all except the final payment therein provided for.  The Steel Bath Tub Company finally failed, about the time work was suspended by Murdock; and it is perhaps a proper inference that he stopped work when he was no longer able to procure money from the complainants, notwithstanding the fact that they had paid all that he was entitled to.  The inter-

est of the Steel Bath Tub Company was finally sold for a small sum to some one not a party to this proceeding, and Murdock mortgaged the machines to a bank.

Work was suspended on the machines for a year or more, until finally Sloman and Murdock made an arrangement whereby the former agreed to furnish money to complete the machine for a half interest in the invention and machines. A contract was also made between Sloman and the Murdock Valve Company, which claimed to own the machines in process of construction. Sloman afterwards invested upwards of $10,000 in attempts to complete the machine, more than $4,000 of which was paid before he had any notice of complainants' connection with the matter. Charles F. Murdock died a few months after Sloman became interested, and this bill was filed against his son, Charles A. Murdock, Wing, the administrator of Charles F. Murdock, and Sloman. It prays an injunction to restrain the disposition of the property during the litigation, and a decree that Wing, the administrator, be required to apply for a patent covering the invention, and assign the same to the complainants, and, if Charles A. Murdock be found to be a joint inventor, as claimed by him, that he be required to join therein, and that all defendants be required "to assign to the complainants their joint or several interests in and to any patent that they have heretofore or may hereafter apply for." In other words, it is a bill for specific performance, as already said.

It is unnecessary to discuss the evidence at length. We think it justifies the conclusion that the complainants made all payments required by the contract, and that a machine embodying certain principles was thought out, and drawings thereof made. A model of the machine was produced, which made the miniature tub, and the basic principles of the larger machine, which was begun before Murdock's death, were incorporated in the model machine. The large machine was not built at the time Murdock died, if it has been since, and no machine has ever been erected upon complainants' premises. Granting that

the machine was invented, it is manifest that much work and many and repeated changes and alterations were necessary before it could be made to do the contemplated work. This was true when Murdock died, and, if the machine can now be said to have been perfected, it has been done by others at the expense of Sloman. But it is claimed that the machine is not now perfected, that the estate of Murdock is insolvent, and that much skilled labor will be required to devise and make alterations, and to perfect and build the machines provided for by the contract. Furthermore, there is evidence tending to show that Charles A. Murdock is a joint inventor with his father, and therefore an owner of an interest in the invention, while, as already said, one not a party to the record owns a substantial interest in the contract under an assignment from the complainants.

We need not pass upon the many legal questions discussed. If it were to be conceded that there is no legal impediment, it would be inequitable to make such a decree as is asked for, especially against Sloman. A court of equity will not usually decree specific performance where justice cannot be done to all parties.

The decree of the circuit court is affirmed, with costs, but without prejudice to any other remedy that complainants may have against Murdock's estate upon the contract.

Moore, Grant, and Montgomery, JJ., concurred.