E. N. Gillespie, Trustee, etc., Appellant, v. Fulton Oil & Gas Company, S. C. Bowman, T. N. Rogers and Walter Hennig, Appellees.

1. INJUNCTION—*when lies to restrain breach of contract.* Whenever a contract is one of that class which will be affirmatively specifically enforced, a court of equity will restrain its breach by injunction, if this is the only practical mode of enforcement which the terms of the contract will permit.

2. SPECIFIC PERFORMANCE—*when awarded.* A party cannot, as a matter of absolute right, have a contract specifically enforced in equity, but the exercise of this power rests in the sound discretion of the court in view of the contract and the surrounding circumstances.

3. LANDLORD AND TENANT—*when oil and gas lease voidable.* An oil and gas lease will be held voidable at the instance of the lessor where it appears that the lessee has not observed his obligations as to development. The rule in regard to the observance of such obligations is strict, and the right to the rescission of such a lease for the non-observance thereof exists independently of the fraud of the lessee, which, however, appeared in this case.

4. LANDLORD AND TENANT—*when oil and gas lease void.* An oil and gas lease made with respect to homestead premises is void as to such homestead unless joined in by the wife, the value of the

homestead estate being determined as of the date of the execution of the lease.

Bill in chancery. Appeal from the Circuit Court of Crawford county; the Hon. E. E. NEWLIN, Judge, presiding. Heard in this court at the August term, 1907. Affirmed. Opinion filed March 18, 1908.

CHARLES GIBBS CARTER, GOLDEN, SCHOLFIELD and SCHOLFIELD and PARKER & CROWLEY, for appellant.

GEORGE W. JONES, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a proceeding in chancery, in the Circuit Court of Crawford county, by appellant against appellees. The bill is in the nature of a bill for specific performance of the terms of an alleged "oil and gas lease," and is a bill for "negative specific performance." The case was heard on bill, answers, and evidence produced in open court. And the court made specific findings in favor of appellees, and rendered a decree dismissing appellant's bill. Appeal to this court duly prayed, allowed and perfected.

It is alleged in the bill that on the seventeenth day of May, 1905, appellee, S. C. Bowman, executed to one T. E. Pierce an "oil and gas lease," as follows:

"In consideration of the sum of one dollar, the receipt of which is hereby acknowledged—S. C. Bowman party of the first part, hereby grant and lease unto T. E. Pierce party of the second part, all the oil and gas in and under the following described premises, namely, all that lot of land situated in the township of........, in ............ county, State of Illinois, described as follows: to-wit: west side of nw of ne quarter of sec. 11, t 8, r 14 west and ne quarter of the nw quarter of sec. 11, t 8, r 14 west, all in Crawford county, Illinois, containing fifty acres more or less, together with the right to enter thereon at all times, for the purpose of drilling and operating for oil and gas, and to erect and

maintain all buildings and structures and lay pipes necessary for the production and transportation of oil and gas. To have and to hold the above described premises for the term of five years from the date hereof, and as much longer as oil or gas is found in paying quantities on said premises on the following conditions:

"Second parties shall within twelve months from date hereof drill to completion a test well upon said premises; if gas is found in sufficient quantities to transport, second parties agree to pay first party the sum of one hundred dollars per year for the gas product of each well from which gas is transported, payable annually when a market is found for the gas and first party to have gas free of cost, to heat and light one dwelling house, to be transported at first party's cost. If oil be found in paying quantities the first party shall have the one-eighth of all oil produced and saved from said premises to be delivered in the pipe line with which second parties shall connect their wells.

"The party of the first part grants the further privilege to the parties of the second part of the right of way over and across said premises to the place of operating together with the exclusive right to lay pipes to convey oil and gas, the right to remove any machinery or fixtures placed on said premises by their doing the least possible damage to said premises, and the party of the first part reserves the right to use and enjoy said premises for the purpose of tillage and all purposes not inconsistent with the object and purposes of this lease, except such as may be necessary for the purposes above mentioned.

"The second parties to lay all lines deep enough under ground as not to interfere with the cultivation of the land.

"The second party hereby agrees to pay all damage done to growing crops by the laying of pipes.

"In case no well is completed on said premises within twelve months from this date the parties of the second part shall pay to party of the first part a rental at the rate of twenty-five cents per acre per year, to

be paid annually, counting from the expiration of said twelve months.

"It is further agreed that in case no paying well is completed on said premises within five years from the date hereof this grant shall be null and void, without further agreement of the parties hereto.

"No well shall be drilled within two hundred feet of any dwelling house or building without a written permit from first party.

"The second parties shall have the right to use sufficient gas and water to run all machinery for operating wells, also the right to remove all its property at any time, but without interference with first party's water supply.

"Upon abandonment by second party of the premises, or upon expiration of the rights and privileges of the second parties under the provisions hereof, the second party agrees to execute full release to party of the first part.

"The parties of the second part hereby agree to complete_____ test well in ............, county, Illinois on or before the ............, 190  or forfeit all rights under this lease.

"It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors, administrators, successors and assigns.

"In witness whereof, the parties hereunto have set their hands and seals this the seventeenth day of May, 1905.

S. C. Bowman.   [Seal.]<br>T. E. Pierce.    [Seal.]"

It is further alleged in the bill that Pierce assigned the lease to appellant; that Pierce and appellant have been willing, able and ready to keep and perform and have kept and performed all the covenants required by the terms of the lease to be kept and performed by them; that subsequent to the execution of the lease to Pierce, Bowman leased the premises to appellee, Rogers, and that Rogers had notice of the prior lease to Pierce and of its assignment

to appellant; that Rogers assigned his lease to appellee, Fulton Oil and Gas Company; that an assignment was also made to appellee, Walter Hennig, and that Walter Hennig, either on his own account or on behalf of Fulton Oil & Gas Company, took possession of the premises and bored and completed thereon a producing oil well of great value. And that Bowman refused to permit appellant and his associates to go upon the premises to operate for oil and gas under his lease. The prayer of the bill is as follows: "That the defendants may be required to answer, but not under oath, oath being waived. That a temporary injunction may be granted restraining Walter Hennig, T. N. Rogers and Fulton Oil & Gas Company from trespassing on premises described in bill or from taking oil or gas from or out of said premises and from selling or disposing of any oil and gas already obtained therefrom, and from drilling further wells on said premises and from selling the oil that has or may hereinafter be produced from said premises and that upon a final hearing hereof the injunction may be made final; and that said S. C. Bowman, T. N. Rogers, Walter Hennig and Fulton Oil & Gas Company may be enjoined and restrained from preventing the complainant and his associates and their employees and agents from entering upon said premises and operating same for oil and gas and that said Pierce lease may be decreed to be the only subsisting lease on said premises for oil and gas purposes, and said lease from the said S. C. Bowman to the said T. N. Rogers may be declared null and void and a cloud upon the title of the complainant and his associates and as such may be ordered to be delivered up and canceled.

And that the said T. N. Rogers, Walter Hennig and Fulton Oil & Gas Company be decreed to have no right, title or interest of any kind in and to the oil and gas underlying said premises or that has been produced therefrom or the proceeds thereof and that they may be restrained from claiming any right, title or

interest therein or thereto; that the said T. N. Rogers, Walter Hennig and Fulton Oil & Gas Company may be required to discover the amount of oil and gas taken from said premises and render an account of all that they or either of them have sold from said premises.  *  *  *  "

The substance of the answers, is as follows: Appellee, Bowman, among other things not deemed by us material, states: that said Pierce applied to him to make a lease, and falsely represented himself to be a practical operator and producer of oil and gas, and promised that if said appellee would make such lease to him that he would proceed without delay to drill and develop said lands; that said appellee relied upon said representations and promises; that neither Pierce nor appellant offered or attempted to commence or complete said well within twelve months, and that he did not prevent either of them from doing so within that period; that this appellee did on the twentieth day of August, 1906, lease the said lands to appellee, Rogers, and that Rogers assigned his lease to appellee Hennig, and that Hennig thereafter went upon said lands and drilled a well thereon for oil; that the said premises were the homestead of appellee Bowman and his family at the time of the making of the pretended lease to Pierce. Appellee, Rogers, states that he went upon said premises with the consent of Bowman and drilled a well. Appellees, the Fulton Oil & Gas Company and Rogers, state: that after February 1, 1907, the date of the filing of appellant's bill, the oil and gas interests of said premises were owned by the Fulton Oil & Gas Company and Hennig, subject to the royalty reserved to Bowman and wife, and that neither Pierce nor appellant ever performed or offered to perform any of their covenants with respect to boring for or producing oil or gas upon said premises, until after Hennig had completed a valuable oil well thereon. All the answers set up that at the time of the execution of

the alleged lease to Pierce, the premises in question was the homestead of appellee Bowman, that he was the head of a family residing with the same, that his wife did not join in the alleged lease to Pierce, and that neither Pierce nor appellant ever went into possession, or entered upon the premises or any part thereof, thereunder.

We are of opinion that the evidence together with a proper interpretation of the character and terms of the alleged lease, establishes the substance of all the material averments in each and all of the answers.

At this point we note again, that this was a proceeding for "negative specific performance." "An injunction restraining the breach of a contract is a negative specific performance of such contract, and the jurisdiction to grant such injunction is substantially coincident with the jurisdiction to compel a specific performance." "As a general proposition, whenever the contract is one of a class which will be affirmatively specifically enforced, a court of equity will restrain its breach by injunction, if this is the only practical mode of enforcement which the terms of the contract will permit." "A party cannot, as matter of absolute right, have a contract specifically enforced in equity, but the exercise of this power rests in the sound discretion of the court, in view of the contract and the surrounding circumstances." Chicago Municipal Gas Light Co. v. Town of Lake, 130 Ill. 42; East St. Louis Connecting Railway Company v. City of East St. Louis, 81 Ill. App. 109; same case in 182 Ill. 433.

"Although a contract may be legal and enforceable, it must be perfectly fair, equal and just, and such as a court of equity will commend, in order to justify a decree of specific performance." Canal Com'rs v. Sanitary Dist. of Chicago, 191 Ill. 326.

"No matter what form a transaction may take, however plausible on its face, equity will discover the real intention of the parties and will not permit one

party to reap any advantage from a contract not just to others with whom he is dealing." Hale v. Bryant, 109 Ill. 34.

"A contract will not be specifically enforced, unless it has been made without misrepresentation or misapprehension and with perfect fairness." Hatch v. Kizer, 140 Ill. 583.

The money considerations mentioned in the lease are purely nominal. The substantial and moving consideration was the covenants with respect to the development of the property by the drilling to completion of oil and gas wells and the equipping of the same so as to make the premises royalty producing. It is apparent from the evidence that Pierce did not, at the time he procured the lease, intend to perform or to attempt to perform any part of these covenants and neither he nor appellant, his assignee, ever took any steps to that end or made any offer to do so, or any excuse for not doing so, until after much more than the full year had elapsed, and until after Hennig had completed a valuable oil producing well on the premises.

The contract of lease which Pierce entered into with Bowman was purely a matter of speculation on his part and was not with a purpose to prospect the lands for gas and oil as he led Bowman to believe it was, at the time the lease was executed. The transaction lacked good faith and honest purpose on the part of Pierce as to the whole substance of the valuable and moving consideration for the lease.

As to oil and gas leases the greatest strictness prevails as to time of development. The Circuit Court of Appeals in Huggins v. Dailey, 99 Fed. 606, 48 L. R. A. 320, holds as follows: "By a course of decision in West Virginia which has established a rule of property it is settled that an oil and gas lease, in which the sole compensation to the lessor is a share of the product, is not a grant of property in the oil or in the land until oil is actually produced, but merely the right of possession for the purpose of expiration and develop-

ment; and there is always an implied, if not an express, covenant for diligent search and operation. A different rule of construction obtained as to oil and gas leases from that applied to ordinary leases or to other mining leases, and, owing to the peculiar nature of the mineral, and the danger of loss to the owner from drainage by surrounding wells, such leases are construed most strongly in favor of the lessor. Where an oil and gas lease, by which the lessor is to be compensated solely by a share of the product, contains a proviso requiring the lessee to make and complete a well on the property within a specified time, such proviso and the time of its performance are of the essence of the contract, and it constitutes a condition precedent to the vesting of any estate in the lessee, without regard to the grammatical construction of the instrument. When the lessee makes no attempt to comply with such provision, and evidences no intention to do so, at the expiration of the term stipulated the lease becomes forfeitable at the option of the lessor, although by its terms it is for a definite term of years; and, being in possession, the exercise of such option is sufficiently evident by the lessor's execution of a new lease to another party."

So much without any element of fraud or misrepresentation; but in this case the answers aver and the evidence proves that Pierce falsely and fraudulently represented that he was a practical operator and oil producer and that he would proceed without delay to drill a well and develop said lands, and there was not only a total failure "to make good," but there was never any *bona fide* purpose on his part to even try "to make good." A court of equity will not decree a specific performance of such contract, under such circumstances.

Since this case was argued by counsel and taken under advisement, the Supreme Court has handed down an opinion settling the questions involved in the

homestead feature of the case, adversely to the contentions of appellant.

The premises in question was the homestead of Bowman and he resided upon it with his family at the time of the making of the Pierce lease. His wife did not join in that lease; it was therefore void, to the extent of the value of the homestead; and this value is to be determined as of the date of the execution of the lease and not at any subsequent time, not as counsel for appellant contend, as of the time Hennig completed his well and discovered and commenced to produce oil, nor at the time thereafter when appellant's bill was filed. Bruner v. Hicks, 230 Ill. 536.

Counsel for appellant suggest that even if the lease is void to the extent of the value of the homestead, still, it is good as to the excess over and above $1,000 in value. Neither the bill nor the prayer is framed with a view to that state of case, and the evidence wholly fails to prove that there is any such excess. The evidence does not prove that at the time of making the Pierce lease the premises was worth more than $1,000.

The decree of the Circuit Court is affirmed.

*Affirmed.*