## Minnetonka Oil Company et al., Appellants, v. Absalom Boyd et al., Appellees.

1. CONTRACTS—*jurisdiction of equity to restrain breach.* An injunction restraining the breach of a contract is a negative specific enforcement of that contract; the jurisdiction of equity to grant such an injunction is substantially coincident with its jurisdiction to compel its specific performance—both are governed by the same doctrines and rules.

2. CONTRACTS—*when. oil lease lacking in equitable mutuality. Held,* that the oil lease, so-called, in this case, did not possess the elements of equitable mutuality and that therefore negative specific performance thereof cannot be awarded.

3. PRACTICE—*when performance will not be enforced by injunction.* Negative specific performance of a contract will not be enforced by a court of equity, in the absence of equitable mutuality in the° contract° sought to be enforced.

Bill in equity. ˜Appeal from the Circuit Court of Crawford county; the Hon. ENOCH E. NEWLIN, Judge, presiding. Heard in this court at the February term, 1908. Affirmed. Opinion filed September 12, 1908.

EUGENE MACKEY and W. W. ARNOLD, for appellants; LEE & MACKEY, GOLDEN, SCHOLFIELD & SCHOLFIELD and McCARTY & ARNOLD, of counsel.

PARKER & NEWLIN and CALLAHAN, JONES & LOWE, for appellees.

MR. JUSTICE MYERS delivered the opinion of the court.

This is a suit in equity by appellants against the appellees, praying that the oil and gas lease owned by appellants be declared valid, binding and enforceable as against defendants, and that defendants be enjoined from drilling or operating upon the premises therein described for oil or gas, and from producing, transporting or marketing oil or gas therefrom, and for an accounting of the oil and gas already produced, marketed or wasted. On the 9th day of June, 1905, James Apple and Grover Apple, owners of eighty acres of land in Crawford county, Illinois, their wives joining therein, signed, sealed, acknowledged and delivered to W. W. Seybert, of McKees Rocks, Pa., the following written instrument:

"Agreement of Lease, made this 9th day of June, A. D. 1905, between James Apple and Lucinda, his wife, Grover C. Apple and Della, his wife, of Oblong, Ill., lessor, and W. W. Seybert of McKees Rock, Pa., lessee. Witnesseth: That the lessor does hereby grant unto lessee for the term of three (3) years (and so long thereafter as oil or gas is produced from the land leased, and the royalties and rentals paid by the lessee therefor) the exclusive right to mine for and produce petroleum and natural gas, from, and the possession of so much of eighty (80) acres of land, in Crawford County, State of Illinois, as may be necessary therefor, with the right to use water and gas (if found) for the necessary engines, and to remove all machinery, fixtures, etc., placed by lessee on the premises.

Said land bounded: S. E. ¼ of N. W. ¼ and S. W. ¼ of N. E. ¼ Sec. 8, T. 6, N. R. 13 W.

No well to be drilled within 300 feet of the buildings without lessors' consent.  The lessee to deliver to lessor in pipe line the one-eighth (⅛) of all petroleum produced from the premises, and to pay One Hundred ($100.00) Dollars per annum for each gas well from which the gas is marketed, payable semi-annually from the date and while the same is so utilized, and to pay all damages to growing crops.

The lease to be null and void and no longer binding on either party if a well is not commenced on this block of 1,000 acres within twelve months from this date, unless the lessee shall thereafter pay annually to lessor 25 cents per acre, dollars, per year for each year's delay in commencing said well.  Each payment to extend the time for completion for one year.  A deposit to credit of lessor in Oblong Bank, Oblong, Ill., etc., to be a good payment of any moneys on this lease.

Party of the first part to have free gas for the dwelling thereon by laying their own line and making connections at well.  Provided there is surplus gas and at no time to use gas out of dwelling.  Party of the second part to protect all lines.

Lessee to bury pipe lines below plow depth when requested.  Witness the hands and seals of the parties.''

This instrument was filed and recorded in the county recorder's office.  On April 3, 1906, W. W. Seybert assigned to the Minnetonka Oil Company, a Pennsylvania corporation, all his right, title and interest in and to the south half of said premises, forty acres.  By mesne and successive assignments, duly recorded, T. N. Barnsdall claims ownership in leasehold of the north half of said premises.

On or about April 30, 1906, the appellees entered upon the premises described, drilled and completed wells thereon, from which oil and gas was taken and marketed.  Appellees claim right to and in said premises by virtue of a lease made and entered into by the said James and Grover C. Apple on April 28, 1906, to Absalom Boyd, Alexander McDonald and D. D. Flana-

gan, their successors and assigns. Upon bill, answer and replication issues growing out of the foregoing state of facts were brought to hearing before the court, and the decree from which this appeal is prosecuted was rendered.

Though the bill in this case is not in technical form for specific performance of a contract, the proceedings being of that nature and so characterized by the prayer for relief, the bill will be treated as one for specific performance and equitable principles will be applied accordingly in determining the rights of the parties in litigation. "An injunction restraining the breach of a contract is a negative, specific enforcement of that contract. The jurisdiction of equity to grant such injunction is substantially coincident with its jurisdiction, to compel a specific performance. Both are governed by the same doctrines and rules." Pomeroy's Equity Jurisprudence, sec. 1341; Chicago Mun. Gas Lt. Co. v. Town of Lake, 130 Ill. 42.

For several reasons based upon equitable propositions which it will not be necessary to discuss, we are of opinion that the appellants are without equitable right or remedy for the relief sought by the bill. The writing or lease, as it is called, by its terms and the evident purpose for which it was secured from the original owners of the land in controversy, is not such as a court of equity will require to be specifically performed. It is wholly lacking in equitable mutuality. "The general principle is that where the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other." Tryce v. Dittus, 199 Ill. 189. "A contract to be specifically enforced by the court must be mutual, that is to say, such that it might at the time it was entered into, have been enforced by either of the parties against the other of them." Gage v. Cummings, 209 Ill. 120.

Tested by the foregoing propositions it is clear that the Seybert contract is not one to be enforced by bill for

specific performance for "at the time it was entered into" Seybert, the lessee, was under no obligation or covenant contained in the lease or contract which a court of equity could compel him to perform.  He promises nothing, agrees to nothing, does nothing precedent to that which would entitle the lessors to the payment of rental or compensation for the oil and gas which might subsequently be produced from the land. Though it was impliedly, if not expressly understood, Seybert was to develop the oil and gas supposed to exist (and this we will consider later) he was not bound in such manner that a court of equity could compel him to act, to perform.  On his part the contract was optional, for which no consideration was given except a promise to do or pay something in case he exercised his right under the option.  The contract was not one that equity could enforce against the complainants or their assignors, and for this reason alone the decree of the Circuit Court was justified.  Bond v. Lumaghi, 209 Ill. 316.  In the case of Canal Commrs. v. Sanitary District, 191 Ill. 326, we find another well-established and applicable proposition to justify the decree in this case.  "Although a contract may be legal and enforceable, it must be perfectly fair, equal and just, and such as a court of equity will commend in order to justify a decree of specific performance." And also in Hale v. Bryant, 109 Ill. 34: "No matter what form a transaction may take, however plausible on its face, equity will discover the real intention of the parties and will not permit one party to reap any advantage from a contract not just to others with whom he is dealing."  In paraphrase of language used by this court in construing an oil lease in the case of Gillespie, Trustee, v. Fulton Oil and Gas Co. (140 Ill. App. 147), the substantial and moving consideration was the implied covenant with respect to the development of the property so as to make the premises rent or royalty producing.  From the terms of the lease and the use thereafter made of it Seybert did not, at

the time he procured it, intend to perform or undertake any of the implied covenants whereby the promised royalty or rent could be realized. Neither he nor his assigns ever took any steps to that end or made any offer to do so, or any excuse for not doing so, until after the lapse of more than a year, the time beyond which the lease became void by its terms, unless by a nominal payment thereafter made the period for development was extended, and not until the appellees under color and claim of right, had taken possession and developed the property.

By citation, approval and quotation from the opinion of the court in the case of Huggins v. Daley, 99 Fed. Rep. 606, this court is committed to the rule adopted by the courts of West Virginia in the construction of oil leases and the interest in the property which may thereby be acquired. Gillespie v. Fulton Oil Co., *supra*. Under this rule "an oil and gas lease in which the sole compensation to the lessor is a share of the product (or royalty), is not a grant of property in the oil or in the land until oil is actually produced, but merely the right to possession for the purpose of exploration and development, there is always an implied if not express covenant for diligent search and operation."

Other questions made by the assignment of errors have been discussed by counsel, but as indicated not being material to a decision of this case, it is therefore unnecessary to further consider them. The decree of the Circuit Court will be affirmed.

*Affirmed.*