No. 24,674.

A. E. McGregor, *Appellee*, v. The Farmers State Bank of Washington and B. V. Curry, as Receiver, *Appellants*.

### SYLLABUS BY THE COURT.

1. Specific Performance of Contract—*May be Denied if Enforcement Would be Unfair and Unjust to Innocent Third Persons*. Specific performance of a contract may be denied when its enforcement would be harsh, oppressive, unfair or unjust to innocent third persons, although their interests accrued after the contract was concluded.

2. Same—*Facts and Circumstances Justify the Denial of Specific Performance*. Pursuant to a contract of settlement between a borrower and a bank, the borrower conveyed to the bank real estate at agreed valuations, and delivered personal property which was sold. The total avail to the bank was $51,500, probably less than 50 per cent of what the borrower owed. The bank represented the indebtedness was $116,819. For what it received the bank agreed to satisfy the indebtedness in full and, if on an amicable accounting the indebtedness were found to be less than the sum represented, to restore to plaintiff the difference out of the proceeds of sale of personal property and, if necessary, by reconveyance of one tract of land. Plaintiff sued for an accounting and for specific performance of the agreement to restore, alleging his indebtedness was considerably less than the sum represented. The bank is insolvent and in the hands of a receiver. *Held*, specific performance would be unfair and unjust to creditors of the bank.

Appeal from Washington district court; John C. Hogin, judge. Opinion filed October 6, 1923. Reversed.

*Clad Hamilton, Clay Hamilton,* both of Topeka, *W. D. Vance, and R. E McTaggart,* both of Belleville, for the appellants.

*N. J. Ward,* of Belleville, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one for specific performance of a contract between a borrower and a bank, relating to the borrower's indebtedness to the bank. A demurrer to the petition was overruled, and the bank stood on the demurrer. After the petition was filed the bank was found to be insolvent, a receiver was appointed, and the receiver was made a party to the action. The bank and the receiver appeal from the order overruling the demurrer.

Plaintiff was a customer of the bank, and became indebted to it for a large sum of money. In February, 1921, the bank and plain-

tiff entered into a contract, the occasion and the purpose of which were stated in the preamble, as follows:

"WHEREAS, The second party is indebted to the first party and the first party's assigns, upon various promissory notes executed by second party to first party for money borrowed, a portion of which promissory notes have been by first party sold, discounted to other banks, or otherwise disposed of;

"AND WHEREAS, It is now desired by both of the parties that a settlement and disposition of all the obligations of the party of the second part to the party of the first part, whether evidenced by notes or otherwise, shall be now had;

"AND WHEREAS, It is desired that an accounting be had between the parties thereto to determine the exact amount of said obligations as hereinafter provided for;

"Now, therefore, The following are the terms thereof:"

The contract provided for an accounting by a disinterested person, and for settlement of the indebtedness. Plaintiff agreed to convey certain tracts of real estate to the bank at agreed values. Some liens on part of the real estate were to be adjusted. Some personal property was to be transferred to the bank and sold, and plaintiff guaranteed the proceeds would amount to $3,000. The bank agreed to deliver to plaintiff all his notes and other evidences of indebtedness, marked canceled and paid in full, and to discharge all his indebtedness, principal and interest, in full. Subjects collateral to execution of the contract were covered, and later a supplemental contract was signed in the course of fulfillment of the original agreement. The original agreement contained the following provision, which was confirmed by the supplemental contract:

"In the event that the result of said accounting shows the actual and true amount of said indebtedness of the party of the second part to be less than the amount as represented by the party of the first part to be due it or its assigns, then such difference shall be accounted for by the depository herein named, returning in cash the amount of such difference to the party of the second part, or if there be not sufficient cash in the hands of said depository from the sale of the personal property herein referred to, then the excess shall be accounted for by a reconveyance to the party of the second part of the west quarter of land described in this agreement; in the event that said excess is not of the total value of the equity in the said west quarter, then by a second mortgage in favor of the party of the second part, or his nominee, on said west quarter on the said half section securing the amount of such excess."

The contract contained no representation concerning the amount of plaintiff's indebtedness. The petition pleads the contract, and states, in harmony with the preamble, the purpose was to make a full, final, and complete settlement. In harmony with the preamble

of the contract, there is no allegation of any dispute or disagreement whatever between the parties, or of any compromise or adjustment of any disputed claim. It is alleged plaintiff has fully performed the contract on his part. There is no express allegation the bank has not delivered to him his notes and other evidences of indebtedness, marked canceled and paid in full. It is alleged the amount of plaintiff's indebtedness was represented to him to be $116,819, and that,

"At the time said contract was made, and at no time, was he indebted to the defendant or to its assigns by reason of notes given by the plaintiff to the defendant in the sum as represented by the defendant to him. The exact amount of notes and indebtedness incurred by the plaintiff to the defendant and outstanding and unpaid on the 4th day of February, 1921, this plaintiff is unable to state, but alleges that such was considerably less than the amount represented to him by the defendant as stated."

The petition alleges plaintiff refuses to carry out the provision of the contract relating to an accounting, and no accounting or settlement has ever been had. It is alleged the depositary mentioned in the contract has in his possession money deposited by plaintiff to make good the deficiency in the proceeds in the sale of personal property and, as a basis for alternative equitable relief, it is alleged the west quarter section of land has been so disposed of it cannot be returned to plaintiff.

The prayer of the petition is for an accounting and for such other relief as may be just and equitable in the premises. Plaintiff construes the prayer to mean enforcement of the contract provision for restoration to him of the difference between the true amount of his indebtedness and the amount it was represented to be, should the accounting show he owed less than $116,819. Of course that is the only purpose of an accounting. Courts of equity do not sit merely as auditors, particularly of accounts paid in full. Therefore, unless plaintiff is entitled to enforce the contract for restoration in case the indebtedness was less than represented, the petition fails to state a cause of action.

The personal property did not sell for $3,000, and plaintiff made good the deficiency in cash, in the sum of $1,277.42. The petition specifically alleges the west quarter section of land was of the value of $150 per acre, and the two quarters were taken by the bank at that price per acre. By adjustment of liens the west quarter was left encumbered by mortgage for $2,500, and the other by mortgage for $5,000. Therefore, the net avail to the bank from these con-

· veyances was $40,500. Other real property interests were accepted by the bank at the agreed value of $8,000. The result is, plaintiff paid $51,500 on what the bank believed was an indebtedness of $116,890.

Although plaintiff came into a court of equity for relief according to the well understood standards which are applied there, he was not very frank in his pleading. He avoided giving the court the benefit of his judgment respecting the amount he owed. True, an accounting was necessary to determine the exact amount, but the expression, "considerably less," is too vague to be informing. He likewise avoided saying $51,500 even approximated the true amount. The contract indicates the bank's estimate might be $3,000 too high, and possibly more. Under all the circumstances, the strong probabilities appear to be plaintiff paid less than fifty cents on the dollar, and the suit is to recover part of that.

The doctrine that a consideration is necessary in order that a promise may be enforceable is ·firmly embedded in the law of this state. It is believed the doctrine subserves a sound public policy. Speaking generally, a promise by a creditor to accept as full satisfaction of the whole debt payment by the debtor of a part of it, lacks the essential attendant of consideration; and generally, payment by a debtor of part of his debt furnishes no consideration for any other kind of promise by the creditor relating to the subject of the indebtedness. Once the doctrine of consideration is accepted, these conclusions necessarily follow. The debtor suffers no detriment by paying part of an entire sum which he owes, and the creditor derives no increment of benefit beyond what is due him by accepting partial payment.

In some instances, application of the conclusions stated, which have acquired the authority of rules, seems to offend against more than the mere sense of congruity. In other instances the rules do not apply. If the creditor say to the debtor, "I will give you your note for that horse," and the bargain be struck, the law will not value the horse, and the note is discharged. Likewise, if the creditor, holding his debtor's note for $200, say, "I will take that horse at $100 and give you credit for that amount on your note," and the debtor accept the offer, the law will not value the horse. The debtor has simply made a partial payment of $100 on his note. In these instances, the sense of justice and the doctrine of consideration are

both satisfied. Out of instances in which strict application of the
rules seems to foster bad faith or work injustice to be relieved
against, and out of instances more or less related to those in which
the rules do not properly apply, there has accumulated a mass of
what are called exceptions, and it is sometimes said enforcement of
exceptions is now the rule. (*Sigler v. Sigler,* 98 Kan. 524, 528, 158
Pac. 864.) In recognizing exceptions, however, the courts have re-
sorted to technicalities, artificialities, and speciousness of reasoning
to such an extent that departures frequently rest on less substantial
grounds than the rules. The case just cited is a fair example.

The debtor owed a note for $1,200. He arranged with Wilson as
his agent to buy the note. Concealing the fact that he was acting
for the debtor, Wilson bought the note for $400. He represented to
the creditor the note was of little value and would be difficult to col-
lect. The creditor believed and relied on the representations, when
the fact was, the debtor had arranged either to pay or to buy the
note. The creditor sued for the remainder of the debt. The court
treated Wilson as a stranger. Since he was engaged by the debtor
for the purpose of enabling the debtor to get out of paying part of
his debt if he could, law and equity would have required that he be
regarded as the debtor himself, in any other kind of an action. So
regarded, the law of accord and satisfaction had no application, be-
cause there was no dispute, difference, or disagreement whatever,
which was settled, compromised, or adjusted. It was a simple case
of paying part of a debt for the whole, which, under the law of this
state, is not accord and satisfaction. (*Harrison v. Henderson,* 67
Kan. 194, 72 Pac. 875; *Neely v. Thompson,* 68 Kan. 193, 75 Pac.
117; *Baugh v. Fist,* 84 Kan. 740, 115 Pac. 551; *St. L. Ft. S. & W.
Rld. Co. v. Davis,* 35 Kan. 464, 11 Pac. 421.) Contrary to the prin-
ciples of equity, the deceit employed in buying the note was passed
over because the representations did not technically amount to
fraud, and it was assumed, outside findings of fact returned by the
jury, the creditor must have known about the debtor's financial
affairs. Finally, consideration for acceptance of $400 for $1,200 was
found in the fact the money was paid by a "third person," Wilson,
"the stranger," who came to the creditor in the debtor's shoes. The
decision was well supported by cited authority, and illustrates what
courts can do when determined to defeat a technicality.

In order that what has been felicitously called "the judicial proc-

ess" (Cardozo, "The Nature of the Judicial Process"), may not lose its self-respect and incur the disrespect of others, three courses, at least, appear to be open in dealing with the subject under discussion:

1. Enforce the requirement of actual, new, consensual consideration for a promise to satisfy a debt on payment of part of it, frankly recognizing unsatisfactory results will sometimes follow, as frequently follows application of the rule forbidding oral impeachment of written instruments, application of the statute of frauds, and application of other legal limitations;

2. Frankly make an exception to the present accepted doctrine of consideration, and require the creditor to abide by his agreements founded on payment of part of a debt in satisfaction of the whole;

3. Giving due weight to the legal requirement of consideration and the moral obligation to keep promises, whether to pay debts or to cancel them, and avoiding artificiality, triviality, and sophistication, deal with each transaction involving payment of part of a debt for the whole on fundamental principles of equity.

In this state there is no procedural obstacle to adoption of the course last suggested in any case, and in this case the course is peculiarly appropriate, and indeed obligatory, because plaintiff invoked equitable relief.

Whether or not some items of the debt were questioned or disputed, what plaintiff owed was mutually recognized as amicably ascertainable, and for present purposes equity regards the result of an accounting as before the court. As indicated, there is no pretense that the amount is not much greater than $51,500, or that plaintiff has paid more than that sum.

The contract provided plaintiff's wife should sign the deeds of real estate, and she did so. Plaintiff says this was something of benefit to the bank which he was not obligated to procure. Instead of that, plaintiff procured his wife's signature for his own benefit, in order to bring the value of the conveyances up to the value of the land with which he was credited. It is said in plaintiff's brief part of the land conveyed to the bank was homestead property, and so exempt from execution. He concludes the bank obtained something it could not otherwise get, and so received a consideration for satisfaction of the unpaid portion of the indebtedness, and for the collateral promise. The contract and the petition are silent on the subject of homestead. The parties themselves treated the tract simply

as land worth $150 per acre, and waiver of the exemption enabled plaintiff to obtain larger credit upon his indebtedness. The result is, by means chosen by himself he has made partial payment of his debt. What fairness between him and the bank might require need not be discussed, because there are others to be considered.

The bank is not seeking to recover the canceled portion of the indebtedness. Plaintiff moves, and he does so on the basis, not only that he owes nothing, but that he is a creditor of the bank. The bank's insolvency is necessarily chargeable in part to him. There are creditors who might be paid in full, or more nearly paid in full, if he had kept his promise to repay all the money which he took out of the bank. As to them, his claim upon assets depleted by the amount which he did not pay, is distinctly unfair, and they would be injured if he were permitted to masquerade as one of them at dividend-paying time.

At an early day in England the court of chancery recognized that the effect upon the interests of persons not parties to a contract was a matter which should be considered in determining whether or not the contract should be enforced. (Fry, Specific Performance, 6th ed., § 404.) The courts of this country have approved and applied the principle, and the settled doctrine now is that performance of a contract may be denied when its enforcement would be harsh, oppressive, unfair, or unjust to innocent third persons, although their interests may have accrued after the contract was made. Investigation made without purpose to exhaust the authorities yielded the following decided cases: *Carlisle v. Carlisle,* 77 Ala. 339; *Kelly v. Central Pacific R. R. Co.,* 74 Cal. 557; *Owens v. McNally,* 113 Cal. 444; *Hale v. Bryant et al.,* 109 Ill. 34; *Elliott v. Loucks,* 194 Iowa, 64; *Marston v. Humphrey,* 24 Maine, 513, 518; *Curran v. Holyoke Water Power Co.,* 116 Mass. 90; *Booth v. Murdock,* 132 Mich. 608; *Rathbone v. Groh,* 137 Mich. 373; *Johnson v. Hubbell,* 10 N. J. Equity, 332; *Fremont v. Stone,* 42 Barbour (N. Y.), 169; *Healy v. Healy,* 66 N. Y. S. 927; *Gaul v. Gaul,* 46 N. Y. Sup. R. 806; *Bernard v. Benson,* 58 Wash. 191.

In the following cases the doctrine was recognized, but the circumstances were such that enforcement of the contract was not deemed inequitable: *Dillon v. Gray,* 87 Kan. 129, 123 Pac. 878; *Goddard v. American Queen,* 61 N. Y. S. 133; *McGinness v. Brodrick* (Mo.), 192 S. W. 420; *Carnation Lumber & Shingle Co. v. Tolt Land Co. et al.,* 103 Wash. 633.

The court can conceive of nothing which plaintiff can add to his petition which would countervail the superior equity of creditors of the bank, represented here by their quasi trustee, the receiver; therefore, the judgment of the district court is reversed, and the cause is remanded with direction to sustain the demurrer to the petition and to dismiss the action at plaintiff's cost.