## THE PITTSBURG VITRIFIED PAVING & BUILDING BRICK COMPANY v. THE CEREBUS OIL COMPANY.

### No. 15,815.    (100 Pac. 631.)

#### SYLLABUS BY THE COURT.

CONTRACTS—*Consideration.* Where A owns the gas rights in a tract of land and B owns the oil rights in the same, together with the right to drill and case wells thereon, and B drills, cases and equips a well which proves to be a gas-well of great volume, and A thereafter, with knowledge of the facts, undertakes and agrees to pay B the actual cost of drilling, casing and equipping the well, the contract is supported by a sufficient consideration, and an action may be maintained thereon by B to recover from A such actual cost of drilling, casing and equipping the well.

Error from Wilson district court; LEANDER STILLWELL, judge. Opinion filed March 6, 1909. Affirmed.

### STATEMENT.

THE Pittsburg Vitrified Paving & Building Brick Company had leases of the oil-and-gas rights on large tracts of land in Wilson and Montgomery counties, and on the 5th day of November, 1903, entered into a contract agreeing to assign its oil rights in certain leases of a considerable portion of such lands to George C. Videtto, B. A. Dolan and John C. Scott. In this agreement the parties of the second part agreed to drill not less than a certain number of wells on certain tracts. It was further provided in the agreement as follows:

"First party agrees that in case second parties drill any wells which prove to be gas-wells producing gas having a volume of 3,000,000 cubic feet per day, or more, that, if the Independence Gas Company does not take or claim such gas-well, the first party will take the same and pay the actual cost of drilling, casing and equipping said well as a gas-well, and first party shall have the right to take any gas-well drilled by second parties on said above-described lands by paying the cost of drilling same as above stated, or such portions thereof as parties may mutually agree upon."

There was also a provision in the agreement that the parties of the second part should pay the brick company $1000 per well for each well they failed to drill of the number provided for in the contract.

In turn Videtto, Dolan and Scott entered into a contract with the Cerebus Oil Company to reassign to that company the oil rights in 560 acres of the lands embraced in their contract with the brick company. Among other things this second contract provided: "It is understood no interest in the gas rights shall be assigned. . . . It is understood that in case second party brings in a gas-well having a volume of 3,000,000 cubic feet of gas per day the first party must take same and pay the actual cost of drilling, casing and equipping of said well as a gas-well. First party has the option to take any gas-well drilled by first [second] party by paying the cost of drilling." This contract was made January 16, 1904. The Cerebus Oil Company took possession of the land embraced in this contract, and on or about the 9th day of April, 1904, brought in a gas-well which proved to have a volume of more than 3,000,000 cubic feet of gas per day, and the same was not taken or claimed by the Independence Gas Company.

Thereafter assignments of the leases were made in substantial compliance with the contracts of November 5, 1903, and of January 16, 1904, so far, at least, as concerns the land upon which the gas-well in question is situated.

The Cerebus Oil Company brought this action against the brick company, and attached to its petition a copy of the contract of November 5, 1903, and a copy of the contract of January 16, 1904. It also alleged the drilling of the gas-well of a volume of more than 3,000,000 cubic feet per day, that it was not taken or claimed by the Independence Gas Company, and that the actual cost of drilling and equipping the well was $1797.76. It further alleged that by the terms of the contract of November 5, 1903, the defendant brick company was to

Brick Co. v. Oil Co.

take the gas-well and pay the plaintiff the actual cost of drilling and equipping the same ready for use, and the defendant was to become the owner thereof; that immediately upon bringing in the well the plaintiff presented the defendant a bill of the cost of such drilling and equipping and demanded payment thereof; that at that time and various other times the defendant promised to pay such bill but had neglected and failed to do so. Plaintiff prayed for judgment for the amount and interest.

The defendant in answer denied that it ever agreed to pay the plaintiff the cost of drilling and equipping a gas-well. The defendant further alleged the execution of the contract of November 5, 1903, and said that if the plaintiff claims to be the assignee of the contract it is indebted to the defendant in the sum of $8000 aggregate penalty for the failure to drill the number of wells stipulated to be drilled by the terms of the contract.

Plaintiff in reply denied that it was the assignee of the contract of November 5.

The district court rendered judgment against the brick company for the amount claimed, with interest, and the brick company asks that the judgment be reversed.

*P. C. Young,* and *W. G. Gregg,* for plaintiff in error.

*J. W. Sutherland,* and *Walter H. Saunders,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: It requires but a casual reading of the contracts of November 5, 1903, and of January 16, 1904, to determine that no contractual relation whatever was created thereby between the plaintiff and the defendant. By the former contract the defendant agreed with Videtto, Dolan and Scott, on certain conditions, to assign "all its right, title and interest in and to the oil right in certain leases." It was provided therein that the party of the second part should drill a certain num-

ber of wells on the land, and if they should drill any wells producing gas having a volume of 3,000,000 cubic feet or more per day, and if the Independence Gas Company did not take or claim such well, the brick company would take the same and pay the actual cost of drilling, etc. In the contract of January 16, 1904, between Videtto, Dolan and Scott and the Cerebus Oil Company, it was expressly stipulated that no interest in the gas rights should be assigned, but if in drilling wells the Cerebus company should bring in a gas-well having a volume of 3,000,000 cubic feet of gas per day Videtto, Dolan and Scott would take the same and pay the actual cost of drilling, etc.

On the trial these contracts were introduced in evidence, and they not only failed to prove the plaintiff's claim that by them the defendant agreed to pay the plaintiff the cost of drilling and equipping the gas-well in question, but effectually disproved such claim. The contracts, however, prove that after drilling and equipping the gas-well the plaintiff had no right to the gas, but that it belonged to the defendant.

The evidence in this case does not disclose the details of the contracts between the brick company and the owners of the lands, but it is assumed and asserted by both parties that the brick company owned or had control of the oil-and-gas rights therein. In the contract of November 5 it undertook to convey the oil rights in a portion of the lands to Videtto, Scott and Dolan, under certain specified conditions, among which was the agreement to pay for the drilling and equipping of gas-wells of the specified volume. In turn Videtto, Scott and Dolan, in the contract of January 16, without any reference to their contract with the brick company, contracted under certain conditions differing materially from the conditions of their contract with the brick company, and undertook to convey the oil rights in a portion of the land embraced in the contract with the brick company to the Cerebus Oil Company. The Cerebus Oil Company did not assume any of the obligations

of Videtto, Scott and Dolan to the brick company, nor did the brick company in any way accept the responsibility of the Cerebus Oil Company for the performance of the conditions of the former's contract of November 5 with Videtto, Scott and Dolan. The contracts of November 5 and January 16 were more in the nature of contracts to sell the oil rights in the lands therein respectively referred to than of assignments of leases. Practically the only parallel between those contracts was that the grantor in each only undertook to convey the oil rights in the lands therein described, and agreed to pay the actual cost of drilling, casing and equipping any gas-well brought in by the grantee having a volume of 3,000,000 cubic feet of gas per day. In the contract of January 16 this was an absolute agreement. In the contract of November 5 it was the agreement provided the well was not taken or claimed by the Independence Gas Company. Hence it appears that there was no contractual relation or privity of contract between the brick company and the Cerebus Oil Company.

However, it was pleaded by the plaintiff, and there was evidence tending to prove, that the Cerebus Oil Company had the right to, and did, drill, case and equip a gas-well having a volume of 3,000,000 cubic feet per day, that the brick company alone owned the gas rights in the land upon which the well was situated, and that the brick company, after the well was drilled, cased and equipped, agreed to pay the plaintiff the actual cost thereof. The court made no special findings of fact, but these facts are necessarily involved in its finding in favor of the plaintiff. There was ample consideration for such a contract, and sufficient evidence to support a finding that such a contract was made subsequent to the completion of the well.

The judgment is therefore affirmed.