No. 25,633.

J. A. HOLLAND, *Appellee*, v. WILLIAM C. MARTINSON, *Appellant*.

SYLLABUS BY THE COURT.

1. CONTRACTS—*Establishing Oral Promise—Evidence of Moral Obligation.* When the issue is whether an oral promise to pay money was made, evidence of the existence of a moral obligation to pay the money for benefits received by the promissor, is admissible, and may be considered by the jury as tending to show probability that the promise was made.

2. SAME—*Consideration.* Moral obligation to make recompense for benefits received will sustain a subsequent promise to pay for the benefits.

Appeal from Sedgwick district court, division No. 3; JESSE D. WALL, judge. Opinion filed July 11, 1925. Affirmed.

*Z. Wetmore, Fred Hinkle* and *George M. Ashford,* all of Wichita, for the appellant.

*John W. Adams, William J. Wertz,* and *George L. Adams,* all of Wichita, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by a real-estate agent to recover from another real-estate agent on an oral promise to divide a commission. The verdict and judgment were for plaintiff, and defendant appeals.

---

1. Contracts, 13 C. J. § 961; 53 L. R. A. 353, 26 L. R. A. (N. S.) 520. 2. Id., 13 C. J. § 223; 17 A. L. R. 1299; 25 A. L. R. 635; 6 R. C. L. p. 667.

Holland, the plaintiff, was a real-estate agent at Attica. Mourer was a farmer living near Attica, who desired to trade his land for city property in Wichita. Burdg was a grain dealer in Wichita having city property for sale or trade. Studebaker was a real-estate agent who, at the commencement of negotiations between Mourer and Burdg, represented Burdg. Afterwards Riley, a real-estate agent representing Burdg, effected a trade of Burdg's city property for Mourer's farm. Martinson, the defendant, took some part in the negotiations and Mourer paid him the commission in controversy.

On December 20, 1920, Holland took Mourer to Wichita, took him to Studebaker's office, and the three went to Burdg's office, where Mourer was introduced to Burdg. In this way Holland brought buyer and seller together. Later in the same day Holland took Mourer to Martinson's office, introduced Mourer, and told Martinson what he and Mourer were there for. In this way Holland brought principal and agent together. Holland then took Mourer back to Attica in the automobile in which they had ridden to Wichita. On January 1, 1923, Holland again took Mourer to Wichita, and they went to Burdg's office. Burdg says they were there in relation to the trade. Later in the day Holland and Mourer went to Martinson's office. At some time between January 10 and 15 Burdg went to Attica, inspected Mourer's farm, and made up his mind to trade for it. He returned to Wichita, arriving at 12:30 at night, and was met at the train by Riley and Martinson. Burdg says this was the first time Martinson appeared in the negotiations. On January 11 Holland brought Mourer to Wichita the third time, and the trade was closed on January 20.

Holland was not a good witness. He had difficulty in repeating conversations, and was unable to fix definitely the dates of conversations. The effect of his testimony was that in conversation with Martinson on January 1, possibly later (perhaps January 11), he said Mourer and Burdg had this deal started, and Martinson said he would take care of the deal for Holland and put it over if he could; and that on one occasion Martinson, speaking of letting Holland in on the commission, said, "Keep still, John; I will make it all right with you—split this commission." Martinson gave a different account of his entering into the negotiations and of his participation in them, and denied making the promise.

The court instructed the jury that the two questions in the case

were: whether defendant promised to pay plaintiff one-half the commission received from Mourer; and whether, if the promise was made, there was a consideration for it. Both questions were determined in plaintiff's favor by the following special findings of fact:

"1. Do you find that the defendant promised to give to the plaintiff any part of the commission received by the defendant from Mourer for making the trade with Burdg? A. Yes.

"2. If you answer No. 1 in the affirmative, state what the consideration passing from the plaintiff to the defendant was for said agreement. A. Introducing the buyers.

"3. If you answer No. 1 in the affirmative, was there any consideration passing from the plaintiff to the defendant for such agreement? A. Yes.

"4. If you answer No. 1 in the affirmative, state when the defendant made the promise to give the plaintiff a part of said commission. A. January, 1921.

"5. When was the Mourer-Burdg contract made? A. January, 1921."

In the instructions to the jury the court drew the distinction between a suit for commission by an agent against his principal, and a suit upon an agent's promise to divide his commission with another; but the court told the jury that if Holland introduced Mourer and Burdg, and set on foot the negotiations which resulted in the trade, so that Holland was the procuring cause of the trade, that fact would have a tendency to prove, and might be considered by the jury so far as it tended to prove, that Martinson agreed to divide the commission. Martinson criticises this instruction as involving the fallacy, *non sequitur*.

The likelihood that a trade might result from Holland's bringing Mourer and Burdg together was something of considerable value to Martinson. When Martinson took charge of the negotiations he rested under moral obligation at least to recognize in some substantial manner the pecuniary worth to him of the service Holland had already rendered. The court is not willing to say there is no probability of fulfillment of the moral obligation of one real-estate agent to another based on benefit received, and the fact that Martinson took over this fat chance for a commission created by Holland had some tendency to show probability that Martinson agreed to split the commission.

Martinson deems the jury's finding of consideration insufficient to sustain the verdict. This contention is met by what has just been said. This court has held that a pecuniary benefit already received affords consideration for a promise to pay for the benefit. In the case of *Brick Co. v. Oil Co.*, 79 Kan. 603, 100 Pac. 631, the

46          SUPREME COURT OF KANSAS.

brick company had the gas rights, and the oil company the oil rights, in a tract of land. In drilling for oil, the oil company brought in and cased a gas well. The oil company had no right to the gas. Afterwards the brick company agreed to pay for drilling and casing the well, and it was held the agreement was enforcible. The opinion merely stated there was ample consideration for the agreement. The unstated principle on which the decision rested was that moral obligation to make recompense for pecuniary benefit received will sustain a subsequent promise to pay for the benefit.

The foregoing disposes of the controlling features of the case— the promise and the consideration for it. There are extended criticisms of the proceedings which have not been discussed. None of them is regarded as of sufficient moment to require the granting of a new trial.

The judgment of the district court is affirmed.