No. 26,424.

J. GEORGE BRINKMAN, *Appellant,* v. EMPIRE GAS AND FUEL
COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. MINES AND MINERALS—*Oil and Gas Lease—Consideration—Detriment to Grantee.* In an action between rival oil and gas lessees, a demurrer to the petition of the senior lessee was sustained. Part of the stated consideration for the senior lease consisted of the following: Commencing a test well within the county within a year; promise of the grantee to deliver a portion of oil realized from the grantor's land or pay market price for it; promise to deliver gas for domestic purposes if found; and promise to pay a sum per year if gas were marketed. The grantee did not promise to commence any test well in the county, or to make any effort to realize oil or find or market gas from the grantor's land, and no detriment to the grantee if he refrained from doing so was manifest. *Held,* consideration was not disclosed.

2. SAME—*Oil and Gas Lease—Consideration—One Dollar.* Part of the stated consideration for the lease was one dollar, receipt of which was acknowledged, and which was in fact paid. *Held,* there was consideration for the lease if the payment was made by way of price bargained for by the grantor in exchange for the grant.

3. SAME—*Oil and Gas Lease—Sufficiency of Consideration.* When the lease was executed, the nearest oil and gas producing territory was 200 miles from the land, and it was eight years before oil or gas wells were drilled in the county, the nearest being fifteen miles from the grantor's land. *Held,* the consideration, being of value, and being deemed sufficient by the grantor, was sufficient to bring a contract into existence.

---

Contracts, 13 C. J. pp. 313 n. 68, 613 n. 38, 689 n. 63, 690 n. 78. Easements, 19 C. J. p. 870 n. 12. Limitation of Actions, 37 C. J. p. 1069 n. 91. Mines and Minerals, 27 Cyc. pp. 649 n. 83, 690 n. 5, 722 n. 45, 724 n. 50, 727 n. 65, 738 n. 51; 44 L. R. A. n. s. 54; 18 R. C. L. 1215. Pleading, 31 Cyc. p. 60 n. 64.

Brinkman v. Empire Gas and Fuel Co.

4. Same—*Construction of Lease—Nature of Grant.* The grant was a grant of exclusive privilege for ten years to enter upon, operate for and procure oil and gas on the described land—a *profit a prendre.*

5. Same—*Termination by Nonperformance—Waiver.* The lease interpreted, and *held,* commencing a test well within the county within a year was not a condition nonperformance of which *ipso facto* terminated the lease. Timely performance could be waived, and, under the facts stated in the petition, was waived.

6. Same—*Consideration—Effect of Partial Failure.* Partial failure of consideration resulting from failure to commence a test well within the county did not terminate the lease, which was supported by other sufficient consideration.

7. Same—*Construction of Lease—Election to Operate or Pay Rent.* The lease interpreted, and *held,* notice in writing by the grantor was necessary to terminate the lease for failure to drill a well on the grantor's land within a year, and on receipt of notice the grantee was privileged to elect to keep the lease alive thereafter from year to year by paying an annual rent.

8. Same—*Oil and Gas Lease—Waiver of Right to Forfeit.* Under the facts stated in the petition, privilege of the grantor to forfeit the lease for failure to drill a well on the land or pay rent, was waived.

9. Same—*Oil and Gas Lease—Effect of Junior Lease.* The circumstances stated in the petition under which the junior lease was executed, considered, and *held,* the giving of the junior lease had no effect to terminate or impair the senior lease.

10. Same—*Oil and Gas Lease—Performance—Operations by Junior Lessee.* The senior lease was for ten years, and if oil or gas were found, for as much longer as either could be produced in paying quantities. Before the senior lease expired by its terms, the junior lessee wrongfully entered, kept possession, and produced oil in paying quantities, which it converted to its own use. The senior lessee promptly brought an action to redress his injury, pending which the ten-year period expired. *Held,* the junior lessee may not be heard to say the senior lease expired.

11. Same — *Oil and Gas Lease—Invasion of Rights—Liability in Damages.* Although the senior lessee had no title to the oil converted by the junior lessee, the injury resulting from invasion of the senior lessee's privilege is redressable by damages, involving an accounting for the oil and its valuation at the market price. Whether cost of production should be deducted is not determined.

12. Same. Various procedural matters discussed.

Appeal from Butler district court; Allison T. Ayres, judge. Opinion filed April 10, 1926. Reversed.

*Silas Porter,* of Topeka, *B. R. Leydig, K. M. Geddes, R. E. Grant,* all of El Dorado, *J. K. Cubbison,* of Kansas City, and *William G. Holt,* of Kansas City, Mo., for the appellant.

*Hayes McCoy* and *S. N. Hawkes,* both of Bartlesville, Okla., for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the holder of an oil and gas lease to recover damages for conversion of oil taken from the land by a junior lessee, to enjoin further trespass, to cancel the junior lease, and for such other relief as the facts stated in the petition warranted. A demurrer to the petition was sustained, and plaintiff appeals.

On May 26, 1908, Joshua Shriver executed and delivered to S. R. Walker the lease now held by plaintiff. On August 6, 1914, Shriver executed and delivered to W. M. McKnab the lease now held by defendant. The assignments by which the litigants derive title are not now material. In July, 1917, defendant entered, commenced to operate for oil, and produced and converted large quantities of oil. On November 14, 1917, plaintiff commenced an action against defendant, which was dismissed in March, 1921. On January 2, 1922, the present action was commenced. On November 5, 1923, a demurrer to the original petition was sustained. On April 28, 1924, an amended petition was filed. On March 19, 1925, a demurrer to the amended petition was sustained, and this appeal followed. The contest is between rival lessees, and the primary question is, Which lease should prevail?

When McKnab was negotiating for his lease, Shriver informed McKnab of the Walker lease, and stated he would not lease to McKnab until the Walker lease was released of record. At the time McKnab procured his lease he informed Shriver that the Walker lease was released of record. Believing that the Walker lease had been released of record, Shriver executed the McKnab lease. Except for such belief, the McKnab lease would not have been executed. McKnab was in fact agent of the defendant to procure a lease of the Shriver land. Pursuant to his authority, McKnab investigated the Walker lease, ascertained that Walker had assigned it, and when he procured his lease from Shriver, McKnab knew the Walker lease had not been released, but was in full force and effect. Shriver gave no notice to Walker or his assignees that their lease had terminated, made no claim of that kind, had no intention to give McKnab a lease which would conflict with the Walker lease, and informed McKnab that the Walker lease was in force. The result is, the senior lease prevails, if it was in force when defendant entered.

The Walker lease reads as follows:

Brinkman v. Empire Gas and Fuel Co.

"This Agreement, made between J. Shriver and wife, N. E. Shriver, of Towanda, Kan., party of the first part, and S. R. Walker, of Kansas City, Mo., party of the second part:

"The first party, in consideration of commencing drilling a test well within one year in this recording district, and one dollar, the receipt of which is hereby acknowledged, and other agreements hereinafter contained on the part of the said second party, the first party does hereby lease unto the second party the exclusive right for ten years from date hereof to enter upon, operate for and procure oil and gas upon the following premises, situated in Butler county, state of Kansas, to wit: NW¼, section 14, twp. 26, range 4, acres 160, containing 160 acres more or less.

"The second party agrees to deliver to the first party one-tenth of the oil realized from these premises, in tanks, at the wells without cost, or pay the market price therefor in cash at the option of the first party. If oil or gas be found on these premises, all rights, benefits and obligations secured hereby shall continue so long as either can be procured in paying quantities. If gas is found in any well or wells, first party is to have on demand sufficient gas for domestic purposes on said premises free. If second party shall sell or market gas from any well producing gas only, it shall pay first party therefor one hundred dollars per year during the time such gas shall be sold or marketed. Second party agrees to locate all wells so as to interfere as little as possible with the cultivated portion of the premises, and pay all damages to growing crops by reason of its operations.

"The second party shall have the privilege of using sufficient water from the premises, and if necessary to drill therefor. In case no well is drilled on said premises within one year of date hereof, all rights and obligations secured under this contract shall upon notice in writing by the first party cease, unless the second party shall elect from year to year thereafter to continue this lease in force as to all or any portion of said premises by paying an annual rental of twenty-five cents per acre for all said premises, or such portion as second party may designate, until well is drilled on said premises. Said rentals to be paid by deposit to credit of first party in Towanda State Bank at Towanda, Kan.

"The second party may at any time terminate this lease upon payment of one dollar and by notice in writing to first party, or by surrendering this lease, and be released from all obligations and liabilities under the same. The second party shall have the exclusive right on these premises to erect, lay, maintain, operate and remove all pipes, pipe lines, machinery, tanks and structures necessary for the production, preservation and transportation of oil and gas.

"All conditions of this agreement shall extend to the successors, heirs, executors, administrators and assigns of the parties hereto."

A contract between Shriver and Walker came into existence if there was sufficient consideration. The stated consideration was, commencing a test well in the recording district within a year, payment of one dollar, and agreements of the grantee to pay royalty in mineral and money. Commencing a test well somewhere in the

district within a year did not constitute consideration, because the grantee did not promise to commence any test well, and no detriment to him if he did not commence a test well is manifest. Promise of the grantee to deliver a portion of oil realized from the premises or pay market price for it, to deliver gas for domestic purposes, if found, and to pay a sum per year if gas were marketed, did not constitute consideration, because the grantee did not promise expressly or by implication to endeavor to realize oil or find gas, and so far as the petition discloses he would suffer no detriment if he refrained from exploring and from operating for oil and gas. Want of consideration in such a situation is made clear by Professor Williston's comment on the decision in the case of *Thomas v. Thomas,* 2 Q. B. 851:

"There the plaintiff in return for a promise to convey a life estate in a house, agreed to pay a portion of the ground rent and keep the premises in repair at all times during which she should have possession. As there was no promise on her part, and none could fairly be implied, that she should take possession or keep possession, it was wholly at her option whether she should incur any detriment or not. Remaining out of possession was no legal detriment since she had no right of possession at the time the agreement was made." (1 Williston on Contracts, § 104, note 90, p. 220.)

If exercise of option not to develop the lease would in some way restrict the grantee's freedom, cause him to give up something, or otherwise result in detriment to him, his conditional promise to pay royalty if mineral were found and produced would constitute consideration for the grant. (1 Williston on Contracts, § 104; *Ramey Lumber Co. v. John Schroeder Lumber Co.,* 237 Fed. 39, cited, note 87, p. 219.)

The record in the case of *Cole v. Butler,* 103 Kan. 419, 173 Pac. 978, cited in defendant's brief, has been reëxamined. It appears that the grantee of the lease involved was authorized, "for the considerations hereinafter mentioned," to enter and drill or mine for gas, oil, or other material or substance of commercial value, and to remove the product. No money consideration was recited, and the only promises by the grantee were to pay damages for incidental injuries to growing crops and fences, and the following:

"It is further mutually agreed that gas will be furnished free of charge at well for residence located upon said land for domestic use for three stoves and ten lights when gas is developed on said above-described land."

The lease was clearly without consideration, and the first paragraph of the syllabus and the corresponding portion of the opinion

are overruled. The lease was an offer only. If the offer had been accepted by exercising the granted authority within a reasonable time and before revocation, a contract would have resulted. Because the grantee did nothing during thirteen of the twenty years of the stated life of the lease, and the grantor served notice of forfeiture and demanded a release of record, the judgment of the district court canceling the lease was properly affirmed.

The petition alleged the dollar receipted for in the Walker lease was paid. If the payment was made as the price bargained for by the grantor in exchange for the grant, there was consideration. The court must accept the lease and the pleading as they stand, and they disclose consideration.

To bring into existence a contract, the consideration must be sufficient. When the lease was made, the possibility that oil might be discovered in Butler county, and the further possibility that the Shriver farm might prove to be in the oil-producing field, were so remote the territory was not even classifiable as "wild-cat." An economical person not in what is called "the oil game," would consider the price paid for the lease extravagant. As the event proved, it was eight years before Butler county became the scene of oil activity, and the nearest of the wells first drilled was fifteen miles from the Shriver farm. Under such circumstances, the law will not institute a comparison between the economic values of the granted privilege and the thing the grantor bargained for in exchange for the grant. If it has any element of value at all, and the grantor deemed it sufficient, it is sufficient.

It is sometimes said that the "real consideration" to the grantor for a lease of the kind under discussion is development of the mineral resources of his land. Such use of the term consideration is inaccurate and breeds confusion. Consideration is what the grantee gave by way of money or promise or both for the grant, as the result of a bargain with the grantor. This is a fundamental principle of the law of contracts.

The result of the foregoing is, there was a contract. Walker was granted exclusive privilege for ten years to enter upon, operate for and procure oil and gas on the Shriver farm. The nature of the grant is well understood. It was a grant of a *profit a prendre*. The grantee might utilize or refrain from utilizing his purchased privilege, subject to the conditions of the grant.

The lease did not make prompt development of the grantor's land

imperative. The grantee had an option to pay a small rental per acre for the entire tract, or for such portion of the entire tract as he might designate, until a well was drilled. It seems, however, the grantor was curious about proximity of his land to oil-producing territory. Hence the provision for the test well somewhere in Butler county. Commencing to drill a test well was placed in the category of a deferred installment of consideration. It was not a condition nonperformance of which *ipso facto* terminated the lease. The lease contained one provision for termination on account of inaction of the grantee, and another provision relating to that subject may not be interpolated. Failure of part of the consideration essential to a contract does not terminate its existence. Any part of the consideration which is in itself sufficient will sustain the contract, and it was determined above that the grant was upon other sufficient consideration.

Timely performance of an act to be performed as part of the consideration for a contract, may be waived. If the promisee waives, nobody else can complain. If the promisee does not waive, he must complain promptly. In 1914 Shriver told McKnab the Walker lease was in force. Two years later, oil wells were drilled in the district, and on the face of the petition the grantor acquiesced in the grantee's delay until the provision for testing the district became functionless.

The lease did not automatically terminate because the grantee did not drill on the land described in the lease within one year. Notice in writing by the grantor was necessary to terminate the lease, and on receipt of notice the grantee was privileged to elect to keep the lease alive from year to year by paying an annual rent. The petition alleged that no notice to forfeit had been given, no demand for rent had been made, and privilege to forfeit was waived. Defendant regards the allegation of waiver as a conclusion. In one sense, waiver is an inference from facts. It followed from long-continued neglect to give written notice of cessation of the relations created by the lease, and so was well pleaded; but subject to motion to make definite by stating how, an allegation that a grantor waived privilege to forfeit is an allegation of fact and not a conclusion.

The grant was for ten years, and if oil or gas were found, for as much longer as either could be produced in paying quantities. Before the ten-year period expired, and while plaintiff had time to enter, find and produce oil (and the petition alleges was seeking to

do so), defendant entered, found oil, and is still producing oil in paying quantities. Having brought about the condition which extended the lease beyond the ten-year period, defendant may not be heard to say the lease expired. Defendant's major contention is that the only way the lease could be kept in force for ten years was by drilling a test well within a year, and by drilling on the land within a year and paying rent, and because none of these things was done, the lease expired. As indicated above, this contention is not well founded.

The action is one for relief against an intruder upon plaintiff's privilege. It is distinctly not an action for specific performance of plaintiff's lease. The landowner is not a party, and under the allegations of the petition, defendant does not stand in the landowner's shoes. There are authorities which hold ejectment does not lie, and the legal and equitable remedies invoked are those appropriate, under the circumstances, to redress and to put an end to defendant's trespass.

Plaintiff had no title to the oil converted by the defendant. Nevertheless, the injury resulting from invasion of his interest is redressable by damages. In the case of *Backer v. Penn Lubricating Co.*, 162 Fed. 627, the syllabus reads:

"An oil lease in ordinary form, giving the lessee the exclusive right to explore for, produce and sell oil from the land on payment of a royalty, does not vest him with title to the oil in place.

"Such a lessee, however, has a right of action for damages against one who invades his exclusive right by going upon the land during the term of his lease without his consent and drilling wells and removing and selling oil therefrom." (¶¶ 1, 2.)

A willful trespasser should probably pay the value at the surface of the oil converted. The case cited indicates that cost of production might be allowed to one who entered in good faith under a lease believed to be valid. It is not necessary to determine these questions now. Plaintiff is entitled in any event to an accounting for the oil removed from the premises and its valuation at the market price.

Defendant is not charged with defrauding plaintiff, and the action is not one for relief on the ground of fraud. The action was commenced promptly after defendant took possession. The first action failed otherwise than on its merits, and the second action was commenced within the statutory period. The amendment to the peti-

39—120 Kan.

tion did not predicate recovery upon a new or different cause of action from that already stated, and the second action was not barred by the statute of limitations.

The judgment of the district court is reversed, and the cause is remanded with direction to overrule the demurrer to the amended petition.