ESTATE OF SCHOENKERMAN: SUCHER and another, Respondents, vs. BILLER, Executor, Appellant.

*November 8—December 3, 1940.*

*Herman A. Mosher* of Milwaukee, for the appellant.

For the respondents there was a brief by *Jos. G. Konop,* attorney, and *Albert B. Houghton* of counsel, both of Milwaukee, and oral argument by *Mr. Houghton.*

FOWLER, J.    Goldie Sucher and Ethel Sucher filed claims against the estate of Bern S. Schoenkerman, deceased.    The claimants were mother-in-law and sister-in-law, respectively, of the decedent.    Both claims are for services rendered to the decedent during a series of years in caring for the decedent's home and children.    After continuance of the service for ten years the decedent executed and delivered to the mother-in-law his promissory note for $500 and to the sister-in-law his like note for $1,500.    The claimants in their claims applied the amount of the notes upon the aggregates claimed, and demanded judgment for the difference.    The mother-in-law's claim aggregated $500 and the sister-in-law's $4,610. The court allowed judgments for the amounts of the notes, but disallowed anything in excess of these sums.

The wife of the deceased died in May, 1928.    She was a daughter of the one claimant and sister of the other.    At the time of the death the claimants were maintaining a home in Chicago.    The mother kept the house, and the daughter was employed outside at $15 per week.    The decedent had two children, a son thirteen years old and a daughter seventeen years old.    At the solicitation of the decedent the mother and daughter broke up their home in Chicago, and went to Milwaukee there to take care of the decedent's home and the children and continued to do so until a short time before the death of the decedent, who died May 18, 1939.    The notes were executed May 14, 1938, and were payable in eight months from date.    In maintaining the decedent's home, the mother did the cooking for the family and the daughter did the entire purchasing for the maintenance of the home

and of the clothing for the children. She took entire charge of the household and of caring for the children and did everything of that nature that the wife and mother could have done had she lived. The appellant contends that the mother and daughter lived as members of the family, and that their relations to the decedent were such that the services were gratuitous, and intent to make compensation for them will not be presumed, but express agreement to pay therefor must be proved in order to warrant compensation. This may be conceded. An express agreement was not proved. The trial court so found, and held that there was no legal obligation to pay for the services rendered except as was covered by the notes, but that the notes were valid. The court did not state the basis of his holding that the notes were valid, but if such basis appears his ruling must be sustained.

The crucial question in this case is whether there was consideration for the notes other than natural love and affection. If the sole consideration was the latter then there can be no recovery. *Estate of Smith,* 226 Wis. 556, 560, 277 N. W. 141. However, the *Smith Case* recognizes the rule that a moral obligation will operate as consideration for an executory promise "whenever the promisor has originally received value, material pecuniary benefit, under circumstances giving rise to a moral obligation on his part to pay for that which he has received." To this rule the opinion in the *Smith Case* cites *Park Falls State Bank v. Fordyce,* 206 Wis. 628, 238 N. W. 516; *Elbinger v. Capitol & Teutonia Co.* 208 Wis. 163, 242 N. W. 568; *Onsrud v. Paulsen,* 219 Wis. 1, 261 N. W. 541. In the *Elbinger Case, supra,* the rule is stated as above quoted. The rule as above stated was also applied in *Estate of Hatten,* 233 Wis. 199, 218, 288 N. W. 278, wherein the *Elbinger* and *Park Falls State Bank Cases, supra,* are cited in support.

The appellant contends that as in this case the claimants were relatives of the deceased living in his family there was no legal obligation on the part of the deceased to pay for the services rendered, and that a legal obligation must have existed in order to render the moral-obligation rule applicable. If it be true that under the circumstances of this case the presumption arises that the services were gratuitous, a fact we need not and therefore do not decide, it does not follow that there must have been a legal obligation to compensate in order to constitute a moral obligation a good consideration. It is said of the *Park Falls State Bank Case, supra,* in the *Elbinger Case, supra,* p. 165:

"We there repudiated, as too narrow, the principle obtaining in some jurisdictions that in order for a moral consideration to be sufficient to support an executory promise there must have been a pre-existing legal obligation to do the thing promised, which, for some reason, as the statute of limitations, discharge in bankruptcy, or the like, is unenforceable."

In the instant case the decedent was manifestly under a moral obligation to pay the claimants in addition to what they had received for their ten years of service to him. In executing and delivering the notes to them he plainly recognized that obligation, and from any point of view it afforded more than ample consideration for the notes. The notes were negotiable instruments. They recite that they were executed for "value received." There is a presumption that they were given for a consideration. As a moral obligation existed to pay for the great excess of value of the services received by the decedent over the value of the board and lodging received from the decedent by the claimants, that moral obligation will be presumed to be the consideration for the notes. The notes therefore became a legal obligation, as distinguished from a mere unexecuted promise to make a gift of money.

*By the Court.*—The order of the county court is affirmed.