No. 45,303

ALLIANCE MUTUAL CASUALTY COMPANY and FARMERS ALLIANCE
MUTUAL INSURANCE COMPANY, *Appellees,* v. C. R. SCHEUFLER
and MRS. C. R. SCHEUFLER, *Appellants.*

(453 P. 2d 15)

Opinion filed
April 12, 1969.

*L. James Berglund,* of Great Bend, argued the cause and was on the brief
for the appellants.

*Evart Mills,* of McPherson, argued the cause, and *Michael T. Mills* and
*William S. Mills,* both of McPherson, were with him on the brief for the
appellees.

The opinion of the court was delivered by

HATCHER, C.: This appeal stems from a controversy over the
rights of an agent, who had defaulted by failing to account to his
insurance companies for premiums he had collected, to the agency's
expiration records.

The trial court's findings of fact and conclusions of law were in
favor of the plaintiffs on all issues.

The defendant, C. F. Scheufler, became an insurance agent for
each of the plaintiffs at Hoisington, Kansas, by contracts dated July
11, 1956, each of which contract provides insofar as material here:

"The Agent agrees that all premiums reveived by the Agent shall be held by him as trustee for the Company until delivered to it; and the privilege, if granted, of taking commissions from the premiums shall not be construed as changing the relationship of the respective parties hereto.

"In the event of the termination of this Agreement, the Agent not being in default and thereafter promptly accounting for and paying over balances not in default for which he may be liable, the agent's record, use and control of expirations shall be deemed the property of the Agent and left in his undisputed possession; otherwise the records, use and control of expirations shall be vested in the Company."

In 1961 and 1962, C. R. Scheufler became delinquent from time to time in the remitting of premiums to the plaintiffs and "stop orders," which are directives to write no more insurance, were issued to him on December 17, 1961, April 17, 1962, June 5, 1962, and October 31, 1962. Scheufler brought his accounts to date following the first three stop orders but failed to do so following the stop order issued October 31, 1962.

On November 16, 1962, Leonard Williams, field representative of plaintiffs, called at the Scheufler Agency in Hoisington concerning the past due accounts and was then given five checks by Mrs. Scheufler drawn upon the Peoples State Bank of Ellinwood, Kansas. This transaction will be given more detailed attention when the pertinent issue is considered.

On December 4, 1962, Leonard Williams went to the Scheufler Agency at Hoisington, Kansas. Mrs. Scheufler was there. He told her he was cancelling the agency and that written notices of cancellation would be sent. Mrs. Scheufler and he then removed from the Scheufler filing cabinets the dailies and expirations of the Alliance Companies. The manila folders with the names of the insured were left. He also picked up the insurance supplies of the Alliance Companies such as unwritten policies, rate books, endorsements and other supplies furnished by the companies. The work was finished on December 5, 1962.

R. E. Vohs, of Iola, Kansas, had previously inquired of the Alliance Companies about being appointed an Alliance Agent. He was called about taking over the Alliance business in Hoisington, Kansas, and came to McPherson, Kansas, the main offices of the companies, on the afternoon of December 4, 1962. After some discussion the Alliance Companies offered to sell him their expirations in the Scheufler Agency for $11,231.77, which actually repre-

sented about what the Alliance Companies thought that Scheufler owed them. The sum of $500.00 was paid down to each company and the balance of the purchase price was paid on December 31, 1962. Vohs took over the Alliance business shortly after December 10, 1962.

Vohs testified that Scheufler told him he had reconstructed the expiration records of the Alliance Company policy holders; that Scheufler was calling upon Alliance policy holders whose policies were expiring and that he was unable to hold many of the expirations. He did keep more than $3,000.00 worth of renewal business but he had to work to keep it. The Alliance Companies amended their sales contract to Vohs and paid him back $5,500.00 in May, 1963.

Final audits of the Scheufler accounts showed that Scheufler owed Alliance Mutual Casualty $10,885.97 and Farmers Alliance Mutual Insurance Company $1,642.56, but they announced that they were waiving their claim for the additional $109.09 due Alliance Mutual Casualty Company and the additional $497.55 due Farmers Alliance Mutual Insurance Company.

On December 10, 1962, a letter was mailed to C. R. Scheufler, by the vice-president of the Alliance Insurance Companies, cancelling the agency agreement. The letter will be given detailed attention later.

With these abbreviated facts before us we consider appellants' suggested grounds for reversal.

The appellants contend that there was payment of appellants' debt to the Alliance companies by the payment of Vohs in the purchase of the expirations and, also, the agency contract should be so interpreted that the debt would be considered paid when the companies elected to sell the expirations; the contract should be interpreted as requiring the companies to credit the appellants with any payments received for the expiration records; the Alliance companies had no right to sell the appellants' expirations .except as agent for the Scheuflers and must account for the proceeds, and there was accord and satisfaction between the parties.

We have detailed the rather cumbersome and overlapping contentions in order that it not appear that any of them had been ignored. However, we believe that the contentions present but two simple issues—(1) what were the rights of the parties as to

the expiration records under the terms of the contract, and (2) what was the effect of the letter of cancellation.

The contract provides in no uncertain terms that—

"In the event of the termination of this Agreement, the Agent not being in default . . . the Agent's record, use and control of expirations shall be deemed the property of the Agent and left in his undisputed possession; otherwise the records, use and control of expirations shall be vested in the Company."

The agent was, without a question of fact, in default in his remittance of premiums due the company. The language of the insurance contract left no uncertainty as to whom the expiration records would belong in case of default on the part of the agent. In the recent case of *Mays v. Middle Realty Corp.,* 202 Kan. 712, 452 P. 2d 279, we held:

"When the terms of a lease [contract] are plain and unambiguous the meaning must be determined by its contents alone and words cannot be read into the agreement which import an intent wholly unexpressed when it was executed." (Syl. 4.)

Although this court has not had occasion to pass on the matter, it would appear that the right to ownership and possession of an insurance agency's expiration records are a proper matter for contract. Appellants call our attention to an annotation in 124 A. L. R. 1355 discussing the rights as between insurance companies and agents in respect to expirations and renewals. However, on page 1361 of the same annotation we find the following statement:

"The rule that expirations belong to the insurance agent upon the termination of the agency does not apply in the case of contract provisions to the contrary, and the agency contract need not expressly deny the right of the agent to expirations, but such denial may be implied from the provisions of the contract." (See, also, 44 C. J. S., Insurance, § 148, p. 813.)

Appellants have a further suggestion as to the agency contract. They state:

"Before getting into specifics on this proposal, the appellant Scheufler urged that a contract such as Plaintiffs' . . . which provide for the taking away of an independent agent's most valuable asset, his expiration records, be declared to be against public policy and void. . . . These small businessmen spend their lifetime developing an agency so that their expiration records can sustain them and they can eventually retire by selling their expiration records. . . ."

We have already stated that the right to possession and control of an insurance agency's expiration records are proper matters for contract. Such a contract is, therefore, not against public policy.

If appellants are attempting to stress the facts and circumstances in this particular case, we are not impressed. The appellant, C. R. Scheufler, had been in default with his remittance of premiums four times during the eleven month period from December, 1961, to October, 1962. His accounts were not brought to date following the stop order issued October 31, 1962, when he was some $12,000.00 in default. He gave the appellees five checks carrying different dates in satisfaction of the default. These checks were all returned after deposit marked "Insufficient Funds." In December of 1962, the First National Bank of Hoisington, Hoisington, Kansas, of which C. R. Scheufler was president, obtained a judgment against him for unauthorized loans in the sum of $27,874.95. He also suffered a loss in 1962 of $17,000.00 in the trucking business. He was not a small insurance agent being subjected to persecution. The appellees had ample grounds to believe C. R. Scheufler was not a proper representative to contact their insureds.

The letter of cancellation on which appellants rely reads:

"This will confirm the cancellation of your agency . . .

"The fact that your agency is in default in paying agency balances of these Companies, the records and control of expirations are now vested in our Companies. We will appoint another agent to service this business.

"Whatever amount is obtained from the sale of these expirations will be applied to your past due account. This may take some time and you will be responsible for any balance of the account still due.

"We hope with your cooperation that this balance will be small."

When the letter of cancellation of the agency was written the appellees were making a generous gesture under the assumption that C. R. Scheufler would not compete with Vohs, the new agent, and solicit such expirations. Instead, Scheufler reconstructed the expiration records and proceeded to solicit their business.

On this point the trial court found:

"Vohs said that Scheufler told him he had reconstructed the expiration records of the Alliance Company policy holders. Vohs also said that Scheufler was calling upon Alliance policy holders whose policies were expiring and that he was unable to hold many such expirations. He said actually the expirations which he purchased from the Alliance Companies were really not worth anything. He did keep more than $3,000 worth of renewal business but he had to work to keep it. He finally did develop a good agency but this was because of the new business he worked up.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Defendants thereafter gave no cooperation to plaintiffs. Defendants later threatened suit against the Vohs and the plaintiffs. Defendants solicited the expirations of plaintiffs' insurance policies sold to Vohs and caused many

difficulties to plaintiffs and Vohs, their new agent. Defendants put plaintiffs to substantial expenses, work and trouble to save the business of the companies in the Hoisington area.

"Since no consideration was received for this unilateral promise, it could be withdrawn at any time and plaintiffs were under no obligation to perform."

We are constrained to agree with the trial court.

In *Coder v. Smith,* 156 Kan. 512, 134 P. 2d 408, in discussing consideration, we stated at page 513 of the opinion:

"In this court the question argued is whether the petition alleges any consideration for the oral promise. In 17 C. J. S. 420, Contracts, § 70, it is said: 'Consideration is a benefit to the promisor or a loss or detriment to the promisee,' citing many cases, including *Brinkman v. Empire Gas and Fuel Co.,* 120 Kan. 602, 245 Pac. 107; *Farmers Equity Coop. Ass'n v. Tice,* 122 Kan. 127, 251 Pac. 421; *Rempel v. Shell Petroleum Corp.,* 134 Kan. 350, 5 P. 2d 1094. Also, p. 421, § 71: 'A contract must be supported by consideration to be valid and legally enforceable,' citing *McGregor v. Bank,* 114 Kan. 356, 219 Pac. 520, and many other authorities. See, also, 12 Am. Jur. 564, Contracts, § 72.

"In Restatement, Contracts, the pertinent portion of section 75 reads:

" 'Definition of Consideration: (1) Consideration for a promise is (*a*) an act other than a promise, or (*b*) a forbearance, or (*c*) the creation, modification or destruction of a legal relation, or (*d*) a return promise, bargained for and given in exchange for the promise.' "

The appellants gave up nothing because of the suggestion in the letter of cancellation, the appellees received nothing of benefit, therefore there was no consideration and no binding and enforceable agreement. The conduct of C. R. Scheufler as related above certainly would not be indicative of any equitable claim.

Last—appellants contend that there is no basis in law or fact for the judgment rendered against Mrs. Scheufler.

On this issue the trial court found:

"On November 16, 1962, Leonard Williams, field representative of plaintiffs, called at the Scheufler Agency in Hoisington concerning the past due accounts and was then given checks by Mrs. Scheufler drawn upon the Peoples State Bank of Ellinwood, Kansas, as follows:

| | |
|---|---|
| 11-16-62—FAI | $705.36 |
| 11-16-62—FAI | 439.68 |
| 11-21-62—AMC | 2,320.75 |
| 11-21-62—AMC | 1,287.36 |
| 11-23-62—AMC | 6,034.45 |

"Each check was signed on the lower right-hand side by C. R. Scheufler and across the left end by Mrs. C. R. Scheufler. Mrs. Scheufler said that she then knew and understood that by so doing she was making herself personally responsible for the payment thereof. Such debts were created through the defalcations of these defendants while acting in a fiduciary capacity.

"All of said checks were thereafter deposited and returned marked 'Insufficient Funds.'

.    .    .    .    .    .    .    .    .    .    .    .    .

"Mrs. C. R. Scheufler testified that she had been appointed an insurance agent and that she knew that the collections of premiums were trust funds. She said she signed many policies as the agent for insurance companies, sometimes by signing her own name or else that of her husband and putting her initials underneath. She said the insurance premiums were placed in the Hoisington bank in the C. R. Scheufler account and that she wrote many checks. *She said she wrote checks for rent, household expenses, living expenses and other matters.* C. R. Scheufler said that she normally signed all the checks because she did the bookkeeping." (Emphasis supplied.)

Based on the above findings, the trial court concluded:

"Mrs. C. R. Scheufler, having knowingly used trust funds for her personal benefit and for other than trust purposes and having signed the checks for $10,787.60 knowing and intending that she be liable for their payment, is personally liable along with her husband for such amount of money."

The trial court's findings were supported by substantial competent evidence and the findings support the conclusion of law. No further discussion of this issue would be justified.

What has been said disposes of appellant's alleged counter claim.

A careful examination of the record discloses no justifiable reason for disturbing the judgment of the trial court.

The judgment is affirmed.

APPROVED BY THE COURT.

FROMME, J., dissenting: The appellant Scheufler was in debt to the appellee insurance companies in the amount of $11,921.92. The companies obtained possession of the expiration records which appellant had compiled over a period of six years. They sold these records to another insurance agent for $11,231.77 and received payment of this amount. Later the companies refunded $5,500 to the agent who had purchased these records. The net pecuniary benefit received by the companies from the expiration records was $5,731.77.

The companies gave written notice terminating the agency contract with appellant. In this written notice, which is set forth in the majority opinion, the companies promised the appellant as follows:

"Whatever amount is obtained from the sale of these expirations will be applied to your past due account. This may take some time and you will be responsible for any balance of the account still due."

A written notice of termination was required by the terms of the agency agreement between the parties. The agency agreement provided, "[T]his agreement may be terminated by either party at any time upon *written notice* to the other."

The only written notice of termination received by appellant advised him that whatever amount the companies received from a sale of the expiration records would be applied to his account with the company.

The appellant did not receive credit on his account and the judgments which the lower court entered against him were for a total of $11,921.92. The appellee-insurance companies will have received $5,731.77 from the sale of the agent's expiration records plus judgments for $11,921.92.

This unjust result is permitted because this court accepts the argument of the insurance companies that they received no legal consideration to support their promise to credit appellant with any amount received from a sale of the expiration records. The companies contend the promise was without legal consideration and was properly withdrawn when this suit was filed.

The general principle of law stated in paragraph 3 of the syllabus is based upon the *Restatement, Contracts,* Sec. 75 and *Coder v. Smith,* 156 Kan. 512, 134 P. 2d 408. The statement in *Coder* acknowledges that consideration to support a promise may be the creation, modification or destruction of a legal relation. The promise received in the present case arose out of the termination of defendant's agency relationship with plaintiff.

A consideration adequate to support an executory promise may inhere in the termination of a legal relationship. A moral obligation may arise from benefits previously received by the promisor under such circumstances as will support an executory promise.

Prior to the present promise by the appellees the appellant was an agent of appellees under a written agency contract. This relationship between the parties could be terminated by "written notice". During the preceding five years the appellant had generated approximately $143,000 in premiums and $50,000 in losses. The appellees had received an excess of $93,000 under the agency agreement. When the agency relationship was terminated the written termination notice contained a specific promise to apply the amount received by the company from the sale of the expiration

records to appellant's account. The companies should not be permitted to separate this promise from the terminal obligations of the parties which existed by reason of the termination of their legal relationship. Their letter of termination was conditioned upon the promise included therein. The moral obligation which arose out of the termination of the legal relationship of the parties is sufficient to constitute consideration for the promise.

It is hornbook law that a moral obligation, in the sense of a mere conscientious duty, will not support a subsequent promise.

However, the rule which was recognized by this court in *Holland v. Martinson*, 119 Kan. 43, 237 Pac. 902, holds that a pre-existing legal liability is not essential in every case for a moral consideration to be sufficient to support an executory promise. A moral obligation is sufficient to support an executory promise where the promisor has originally received from the promisee something of value in the form of a material benefit, under such circumstances as to create a moral obligation on the part of the promisor to pay for what he received. This is true even though there was no antecedent or contemporaneous promise or request, and no legal liability at any time prior to the subsequent promise. (See *Old American Life Ins. Co. v. Biggers*, (1949, C. A. 10th) 172 F. 2d 495; *State, ex rel v. Funk*, 105 Or. 146, 161, 209 Pac. 113; *Estate of Schoenkerman*, 236 Wis. 311, 294 N. W. 810.)

In *Holland v. Martinson*, supra, this court held:

"When the issue is whether an oral promise to pay money was made, evidence of the existence of a moral obligation to pay the money for benefits received by the promissor, is admissible, and may be considered by the jury as tending to show probability that the promise was made." (Syl. ¶ 1)

"Moral obligation to make recompense for benefits received will sustain a subsequent promise to pay for the benefits." (Syl. ¶ 2) (119 Kan. 43)

In our present case the companies promised to credit appellant's account with the value received by them from the sale of the expiration records. Benefits were received and a moral obligation to make recompense for those benefits received will sustain a subsequent promise to pay for the benefits. This is true even though the companies were not legally required under the agency contract to credit appellant for the expiration records sold.

The principle upon which I would enforce the promise made by the appellees was applied in the early case of *Brick Co. v. Oil Co.*,

79 Kan. 603, 100 Pac. 631. Our court speaking of the *Brick Co.* case in *Holland v. Martinson*, supra, said:

". . . The unstated principle on which the decision rested was that moral obligation to make recompense for pecuniary benefit received will sustain a subsequent promise to pay for the benefit." (p. 46)

It is undisputed the companies received $5,731.77 from the expiration records which they promised to apply on appellant's account.

I would reverse the judgment and remand the case to the district court with directions to credit appellant's accounts with the amount received by the appellees from the sale of the expiration records and to enter judgments accordingly for the balances.

FATZER, J., joins in the foregoing dissenting opinion.